# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1767

_____

Hanna Aziz, also known as      *
Zahra Mohammed Almosawai,      *
     *
        Petitioner,      *   Petition for Review of an
     *   Order of the Board of
    v.      *   Immigration Appeals.
     *
Alberto Gonzales, Attorney General      *
of the United States,      *
     *
        Respondent.      *

_____

Submitted: December 11, 2006
Filed: March 1, 2007

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Hanna Aziz petitions for review of a final order of the Board of Immigration Appeals (BIA) affirming an Immigration Judge's (IJ) denial of her application for asylum, withholding of removal, protection under the Convention Against Torture (CAT), and cancellation of removal pursuant to battered spouse provisions added to the Immigration and Nationality Act (INA) by the Violence Against Women Act (VAWA). For the reasons stated below, we deny Aziz's petition.

## I. Factual and Procedural Background

Aziz was born to a Shi'ite family in Diwania, Iraq, on June 27, 1969. In 1989, she married Idriss al-Nabi (now a lawful permanent resident of the United States) who fathered her three children. In 1997, al-Nabi petitioned for a visa (I-730) on Aziz's behalf, which was denied. In 1998, Aziz departed Iraq and lived in Jordan for roughly two years. While pregnant with her eldest child in 2000, she traveled to Syria and then flew to Chicago. Aziz thereafter adopted the fictional identity of "Zahra Almosawi" and presented a Saudi Arabian passport with that name to gain entry into America. On October 31, 2000, "Almosawi" filed an asylum application. After the Department of Homeland Security charged her with entering the United States without admission or parole by an Immigration Officer, "Almosawi" conceded she was removable. In asylum-related proceedings and filings, she submitted fraudulent evidence and made flatly dishonest statements to support her contentions that if returned to Iraq she (1) would be subject to an "honor killing" because she had had an extra-marital affair[1] and (2) would be subject to torture and persecution by Saddam Hussein (hereinafter "Hussein"), who had already persecuted her and her family.[2]

---

[1]She submitted false medical documents relating to "Almosawi's" first pregnancy and a fabricated marriage document stating that "Almosawi" had married an Iraqi in Syria (a man who, in actuality, does not exist). Similarly, she falsely testified that she was not married to al-Nabi, that he was not the father of her eldest child, and that her husband in Iraq had learned of an affair.

[2]She submitted seven fraudulent affidavits in which the affiants state that they knew "Almosawi" and her family in Iraq. The affidavits furthermore assert that it is common knowledge that members of her family had been persecuted and killed in Iraq by Hussein's regime. She herself testified that Hussein's regime had killed her father, imprisoned her two brothers (whom she thought might have died while in custody), detained her twice for not following Hussein politically, subjected her to threats of torture, and ransacked her home.

After the government exposed her deception by introducing her original I-730 visa application, Aziz acknowledged that she had lied and recanted her prior testimony. She then revealed what she claimed to be her "real" history. She continued to maintain that her father had been killed by Hussein's regime, that her brothers had been arrested, and that she had been detained twice. Nevertheless, her story of Iraqi persecution changed: she admitted that her two brothers had been released from detention. She sought to withdraw her untruthful asylum application and, at her final hearing, she filed an application for VAWA cancellation, alleging that she was a subservient woman who made false statements and filed false evidence at the behest of her dominating husband. She argued that this amounted to constructive abuse. She acknowledged, however, that she did not fear him, and she stated that he never threatened or harmed her. The IJ found Aziz's asylum application frivolous and denied all of her requested petitions for relief.

## II. Discussion

We review the IJ's decision directly where, as here, the BIA adopts and affirms it. Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005).

Aziz alleges that the IJ erred by (1) finding her asylum petition frivolous,[3] (2) improperly denying her asylum petition without fully considering her past persecution and well-founded fear of future persecution, (3) pretermitting and denying her application for VAWA cancellation, (4) failing to withhold removal under the INA and under CAT, and (5) denying her due process.

---

[3]Although Aziz never explicitly challenged the IJ's frivolousness finding in her petitioner's brief, we will construe her VAWA argument alleging that she had essentially been forced to file a fraudulent application and submit perjured testimony as constituting a challenge to the required intent element of a frivolousness finding.

## 1. Frivolous Application

If the Attorney General determines that an alien made a frivolous application despite having received notice of, *inter alia*, the consequences of so doing, the alien "shall be permanently ineligible for any benefits under this chapter, effective as of the date of the final determination on such application." 8 U.S.C. § 1158(d)(6). Although the INA does not define "frivolous," regulations promulgated under the Act describe a frivolous application as one in which the IJ, after first being satisfied that the applicant had been provided with an opportunity to account for discrepancies and implausible aspects of the application, finds that "any of its material elements is deliberately fabricated." 8 C.F.R. § 208.20; see also Kifleyesus v. Gonzales, 462 F.3d 937, 944 (8th Cir. 2006) (describing the elements for a finding of frivolousness). We look to whether substantial evidence supported an IJ's finding of a frivolous application. See Ignatova v. Gonzales, 430 F.3d 1209, 1214 (8th Cir. 2005) (applying the standard).

The IJ's determination that Aziz's asylum application was frivolous is supported by substantial evidence. When confronted with evidence of her deception, Aziz admitted that she had lied to the IJ and had submitted fraudulent evidence. The deception and fabrication were presented to materially bolster her claim that she would be subject to an honor killing if returned to Iraq. Finally, when she filed her asylum application, an interpreter informed her – and Aziz provided her signature indicating that she understood – that she would be permanently ineligible for any benefits under the INA if she knowingly made a frivolous application for asylum.

While Aziz now admits her involvement in the deceit, she challenges the frivolousness determination by alleging that her actions were compelled by her husband and therefore lacked the requisite deliberateness. The IJ, however, determined that "[t]he respondent and her husband [were] working together to perpetrate the fraud that was brought before this Court on the asylum application."

With respect to the deliberateness determination, we are constrained by the IJ's finding as to credibility and his rejection of Aziz's claim that her husband overpowered her will, as these findings were supported by substantial evidence.[4] See Kifleyesus, 462 F.3d at 945 (dealing with a similar issue). Accordingly, substantial evidence supports the overarching conclusion that Aziz filed a frivolous asylum application. This renders Aziz ineligible for either asylum or VAWA cancellation, as both are INA benefits. Nevertheless, Aziz may still be eligible for withholding of removal or CAT relief. 8 C.F.R. § 208.20 (stating that the frivolous application penalty "shall not preclude the alien from seeking withholding of removal"); see also Liu v. United States Dep't of Justice, 455 F.3d 106, 112 n.2 (2nd Cir. 2006) (noting that an applicant may still benefit from non-INA relief).

## 2. Withholding of Removal

The government will not grant withholding if the alien does not "establish that it is 'more likely than not that the alien would be subject to persecution on . . . [grounds including those of political and religious identity].'" Tawm v. Ashcroft, 363 F.3d 740, 744 (8th Cir. 2004) (quoting INS v. Stevic, 467 U.S. 407, 429-30 (1984)). This requires that the probability of persecution be objectively ascertainable and clear. Id. "We defer to the IJ's determination of the petitioner's credibility if the determination is supported by a specific, cogent reason for the IJ's disbelief." Zhuang v. Gonzales, 471 F.3d 884, 889 (8th Cir. 2006). The burden of proof for withholding

---

[4]Aziz contends, *inter alia*, that a psychological report on record indicates that she was functioning under duress and therefore was susceptible to her husband's influence. Even overlooking the fact that the diagnosis applied to"Almosawi" and not Aziz, it describes a woman so anxious and depressed about her potential removal that it more strongly suggests that she would take any action to avoid it. Furthermore, contrary to her contention that her husband made her dissemble, Aziz acknowledged in her own testimony that she loved the United States and that she had lied only in order to remain in America.

of removal is higher than that required for asylum.  See Francois v. INS, 283 F.3d 926, 932-33 (8th Cir. 2002).

The record amply supports the IJ's assessment that Aziz lacked credibility and submitted false evidence, a finding that undermines her proof of past persecution and the genuineness of her fear of future persecution.  The Iraq condition report and articles on the record note the increase in violence against women who do not closely adhere to Islamic strictures following Hussein's overthrow.  They also mention Hussein's (and current loyalists') tendency to persecute certain Shi'ites, perceived political opponents, and relatives of such individuals.  Nevertheless, other than Aziz's own statements, which the IJ had justifiably found not to be credible, no evidence directly supports her suggestion that she would be persecuted as a woman and only fraudulent affidavits support the suggestion that she might be targeted by Hussein loyalists as a Shia relative of previously targeted political dissidents.  Accordingly, Aziz failed to meet her burden.

### 3. Convention Against Torture

CAT relief requires a showing that the petitioner is "more likely than not" to suffer torture if she returned to Iraq.  8 C.F.R. § 208.16(c)(2).  We review the agency's denial of relief to determine whether the evidence was "so compelling that a reasonable factfinder must have found the alien entitled to relief under the Convention."  Ngure v. Ashcroft, 367 F.3d 975, 992 (8th Cir. 2004).

Aziz maintains that the IJ's denial of CAT relief must be remanded because the IJ failed to analyze the evidence supporting her CAT claim. We disagree.  In response to the IJ's contention that no credible evidence in the record supports a CAT claim, Aziz does not specify any particular evidence that the IJ failed to consider or adequately address.  Instead, she appears to mistakenly rely wholly on our prior conclusion that "[a]n IJ's adverse credibility determination and adverse decisions on

. . . withholding of removal are not determinative of the CAT claim," Esaka v. Ashcroft, 397 F.3d 1105, 1111 (8th Cir. 2005), to support her contention that the IJ should have treated her statements and discredited evidence as worthy of more extensive consideration when analyzed under CAT. Contrary to this position, however, Aziz's credibility remains relevant even under CAT analysis. Even if the IJ's prior credibility finding should not alone be determinative, an "IJ can properly consider a claimant's discounted credibility when determining whether he or she will be subjected to torture." Id.

Aziz provided no credible evidence establishing past torture or suggesting future torture. See id. at 1111-12 (finding that in the absence of credible evidence of past torture, a general conditions report could not suffice to demonstrate that petitioner is more likely than not to suffer torture); see also Desna v. Gonzales , 454 F.3d 896, 899 (8th Cir. 2006) ("Because her CAT claim is based on the same discredited testimony, the BIA properly concluded that the adverse credibility finding is also fatal to that claim."). Nothing in the IJ's decision or the evidence itself leads us to conclude that the IJ failed to consider evidence or allowed the taint of its prior credibility determination to prevent it from applying appropriate weight to the evidence when considering it under the CAT standard. Accordingly, Aziz presented nothing so compelling that a reasonable factfinder must consider it more likely than not that she would be tortured.

### 4. Due Process

Finally, Aziz contends that her due process rights were violated by the IJ's refusal to grant a continuance on her VAWA claim and allow her and her husband to testify further on the issue. To succeed on a due process claim "an alien must prove that he was actually prejudiced by the lack of process afforded to him." Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir. 2003). No prejudice has been shown. Aziz and her husband destroyed their own credibility by demonstrating their

willingness to say and do anything to prevent Aziz's removal. In light of the evidence already in the record that Aziz willingly deceived the court of her own volition, their providing further testimony would not have altered the result.

We affirm the BIA and deny Aziz's petition for relief.

_____