# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2115
_____

Boendi Limbeya

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 16, 2014
Filed: August 22, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Boendi Limbeya, a citizen of the Democratic Republic of Congo (DRC), petitions for review of an order of removal from the Board of Immigration Appeals (BIA). Limbeya filed an application for asylum in 2005. Following a hearing, an Immigration Judge (IJ) found his application frivolous, denied all forms of relief, and ordered him removed to the DRC. The BIA agreed, upholding the removal order. We

grant the petition for review, vacate the BIA's decision, and remand for further proceedings on the issue of frivolousness.[1]

## I. Background

Limbeya was admitted to the United States in January 2005 on an F-1 student visa to attend Wichita State University. In August 2005, he submitted an asylum application. In his application, Limbeya explained that he had been a reporter for "Dignité Humaine"—a human rights organization—in the city of Uvira from 2002–2004. He said that several other activists within the group had been tortured by the Rally for Congolese Democracy (RCD) militia group as a result of their reporting. They killed his brother-in-law, a founder of the organization. Limbeya consequently fled to Burundi in 2004, eventually making his way to the United States. Limbeya said he fears being tortured and killed by RCD if he returns. At the bottom of Limbeya's application, it states "Eric Mafuidi" prepared it, and provides an address and phone number for this individual.

Following Limbeya's application, the Department of Homeland Security (DHS) issued Limbeya a Notice to Appear (NTA) for failing to maintain his non-immigrant student status when he ceased attending Wichita State. Though Limbeya explained he had stopped attending for financial reasons, he conceded removability. He sought adjustment of status based on his December 2008 marriage to a United States citizen; and in the alternative, he sought asylum, withholding of removal, Convention Against Torture (CAT) relief, and voluntary departure.

In September 2010, the IJ held a hearing on the merits of Limbeya's asylum application. Limbeya confirmed that the content of his application was true and correct. On cross-examination, he stated that he had received help from a man named

---

[1]We exercise appellate jurisdiction under 8 U.S.C. § 1252(a) .

Eric Mafuidi in filling out his application because he does not communicate well in English. Limbeya further explained that he had met Mafuidi while in Wichita, and had not known him back in the DRC.

In response to this testimony, the government put on rebuttal evidence, including an affidavit by a man named Coco Chanel Kabongo and the telephonic testimony of DHS Special Agent Jeffrey Broadman, who had interviewed Kabongo. In the affidavit, Kabongo stated he had prepared Limbeya's asylum application. According to the affidavit, Limbeya "called [Kabongo] on the telephone and narrated his asylum story to [him] while he typed it on [his] computer." Kabongo further stated that he "fabricated the information for the preparer's name and address . . . us[ing] a fictitious name, 'Eric Mafuidi.'" Kabongo admitted to preparing other fabricated applications, even providing fake documents for some people. In his affidavit, Kabongo explained he did not know if he had supplied fake documents for Limbeya's case. Agent Broadman testified that he began investigating Kabongo in 2005 after someone revealed Kabongo had created his false asylum application. Agent Broadman explained that Kabongo had told him that "Eric Mafuidi" is one of his many aliases. Agent Broadman also testified that Kabongo would get basic biographical information from applicants over the phone and would create a story to make it seem like he or she was eligible for asylum. Kabongo had told Agent Broadman that he did not know what, if anything, was true in Limbeya's application.

Limbeya testified again in response to the rebuttal evidence. The following exchange occurred between Limbeya and his attorney:

Q. Who wrote on the application . . . who wrote those words . . . [w]ho filled out your asylum application?

A. Eric Mafuidi.

Q. Was Eric Mafuidi holding the pen or were you holding the pen?

A.     He was writing while I was talking.

Q.     Okay. Are any of the facts contained in your application true? Or not true?

A.     Everything is true.

Limbeya then went on to describe his interactions with Mafuidi in detail. He testified that he had met with Mafuidi in person on the Wichita State campus on several occasions, and that Mafuidi traveled back and forth from Baltimore to Wichita because of the large Congolese student body at the university. Limbeya further confirmed that everything in the application was true.

Four months later, in January 2011, Limbeya submitted an affidavit. In it, he recanted his testimony about Eric Mafuidi. He admitted his testimony about Mafuidi was untruthful and claimed he was "surprised, confused, and scared" upon learning Kabongo was involved in "orchestrating a massive fraud." He explained that when he arrived in the United States he did not speak English well, so he reached out to Kabongo, who had been a friend of Limbeya's uncle, to help with his application. Limbeya said, "I contacted [Kabongo] in 2005 and related to him my testimony of the events I accounted in Congo and asked him to translate it into English for me." And "[a]fter he had translated my asylum application testimony in English, he sent me a complete copy and I signed the application forms." He also explained, "Contrary to my previous testimony about the said Eric Mafuidi, I have never met him (Eric Mafuidi) in all my life."

Another hearing was held on March 28, 2011. Afterward, the IJ issued an oral decision. Based on Limbeya's affidavit, the IJ found he lacked credibility. She further found Limbeya's asylum application frivolous. The IJ explained that "[a]t a minimum, the deliberate fabrication is the preparer's name . . . ." As a consequence, Limbeya was ineligible for asylum and for adjustment of status. The IJ also declined

-4-

to reach Limbeya's withholding of removal and CAT claims because, given Limbeya's testimony contained falsehoods, he could not meet his burden of proof for either application for relief. The IJ ordered Limbeya removed to the DRC.

Limbeya appealed the IJ's order, arguing that the government's rebuttal evidence was improperly considered and that his application was not frivolous because the name of the preparer was not "material" to his application. He also argued the IJ should have considered his eligibility for withholding of removal and CAT relief. The BIA dismissed the appeal on April 22, 2013. It found the rebuttal evidence was properly introduced as impeachment evidence. The BIA upheld the IJ's frivolousness finding because Limbeya's affidavit "does not specifically state that the contents of his asylum application are his own." And the BIA similarly refused to remand for findings on Limbeya's withholding of removal and CAT claims since the adverse credibility finding was fatal to both.

## II. Discussion

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Matul-Hernandez v. Holder, 685 F.3d 707, 710–11 (8th Cir. 2012) (quotation omitted). On appeal, Limbeya challenges the admission and consideration of Kabongo's affidavit and Agent Broadman's testimony as well as the IJ's frivolousness finding.[2] We address each in turn.

---

[2]Limbeya also challenges the IJ's adverse credibility finding, arguing the IJ did not consider the fact that he was "surprised, confused, and scared" when confronted with the truth about Kabongo. However, as the BIA explained, the IJ did consider this explanation, and Limbeya lied about knowing Mafuidi even before the government presented its rebuttal evidence. See Nadeem v. Holder, 599 F.3d 869, 873 (8th Cir. 2010) (an IJ need not accept an applicant's explanation for discrepancies and inconsistencies if another conclusion is also plausible). This adverse credibility

## A. Evidentiary Objections

Limbeya challenges the admission of Kabongo's affidavit and Agent Broadman's testimony as unreliable hearsay. Limbeya claims he should have had an opportunity to cross examine Kabongo before the IJ could rely on his affidavit and Agent Broadman's testimony when making both her credibility and frivolousness findings. Limbeya made these same arguments to the BIA, and we agree with the Board that the IJ properly admitted the affidavit and testimony.

First, Limbeya's evidentiary concerns misconstrue the role this evidence played at the hearing and in the IJ's order. The government introduced this evidence in rebuttal as impeachment evidence after Limbeya testified that "Eric Mafuidi" prepared his asylum application, meeting Limbeya in person in Wichita. Because impeachment evidence is not offered for the truth of the matter asserted, it is not hearsay. See Fed. R. Evid. 801(c). Moreover, in making her negative credibility finding, the IJ relied on Limbeya's *own* testimony and affidavit: "After considering the testimony of the respondent on direct examination, cross-examination, redirect and after considering his affidavit . . . the Court finds the respondent was not candid with the Immigration Court and that the inaccuracy or falsehood as to the preparer of the application is such the Court cannot give any weight to the respondent's testimony." Similarly, though the IJ acknowledged Agent Broadman's testimony when finding Limbeya's application frivolous, she primarily relied on Limbeya's lack of candor about who prepared his application.

---

finding was also fatal to Limbeya's withholding of removal and CAT claims. See Zine v. Mukasey, 517 F.3d 535, 541 (8th Cir. 2008) ("When asylum, withholding of removal, and CAT claims are based on the same discredited testimony, the adverse credibility finding is fatal to all three claims." (quotation omitted)).

Second, "the traditional rules of evidence do not apply in immigration proceedings . . . ." Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007) (quotation omitted); see also 8 C.F.R. § 1240.7(a) ("The immigration judge may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial."). Rather, "[t]o comport with the requirements of due process, evidence must be probative and its admission fundamentally fair . . . ." Tun, 485 F.3d at 1026. Further, "[t]o be entitled to relief based on an alleged due process violation, a petitioner under the immigration laws must show . . . that the outcome of the proceeding may well have been different had there not been any procedural irregularities." Id.

Limbeya asserts the evidence is unreliable because Kabongo faced criminal charges at the time he cooperated with the government's investigation and Agent Broadman, in his testimony, relied on Kabongo's hearsay. Even if we consequently found the admission fundamentally unfair, Limbeya fails to explain how the outcome "may well have been different." Limbeya admitted he lied both in his asylum application and during the September 2011 hearing about who prepared his application. And the IJ relied on this acknowledged misrepresentation in assessing Limbeya's credibility and his application's frivolousness. Consequently, we cannot say the IJ erred in admitting and considering this evidence.

## B. Frivolousness Finding

Limbeya also contends the BIA erred in upholding the IJ's determination that his asylum application was frivolous. Whether an asylum application is frivolous is evaluated under the substantial evidence standard. See Aziz v. Gonzales, 478 F.3d 854, 857 (8th Cir. 2007). Under this standard, "we must affirm the BIA's factual decisions unless, after having reviewed the record as a whole, we determine that it

would not be possible for a reasonable fact-finder to adopt the BIA's position." Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004).

"If the Attorney General determines that an alien made a frivolous application despite having received notice of, *inter alia*, the consequences of so doing, the alien 'shall be permanently ineligible for any benefits under this chapter, effective as of the date of the final determination on such application.'" Aziz, 478 F.3d at 857 (quoting 8 U.S.C. § 1158(d)(6)). The Immigration and Nationality Act does not define "frivolous." Instead, regulations explain that an asylum application is deemed frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20; see also In re Y-L-, 24 I. & N. Dec. 151, 155 (BIA 2007) (a finding of frivolousness requires, inter alia, "sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated"). At issue in this case is the BIA's determination that Limbeya fabricated a "material element" of his application such that his application was frivolous.

We have not yet had occasion to address in detail what constitutes a "material element" for purposes of 8 C.F.R. § 1208.20. We have previously found fabricated facts that "materially bolster" an asylum claim sufficient to support a frivolousness finding. Aziz, 478 F.3d at 857 (finding substantial evidence supported frivolousness determination based on admittedly fabricated evidence that the applicant would be subject to an honor killing if returned to Iraq); see also Ignatova v. Gonzales, 430 F.3d 1209, 1214 (8th Cir. 2005) (finding substantial evidence supported frivolousness determination based on fraudulent hospital records, submitted to "bolster [the applicant's] claim of persecution"). Similarly, the Supreme Court, in an action to revoke naturalization under 8 U.S.C. § 1451(a), held that "a concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decision making body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770 (1988) (quotation omitted) (finding

falsifying the date and place of someone's birth in his naturalization petition was not material).

Here, the BIA does not pinpoint the "material element" that Limbeya "deliberately fabricated." Instead, the BIA provides a brief sentence in its decision upholding the IJ: "In finding [Limbeya's] claim frivolous, the Immigration Judge referred to a specific, material aspect of the respondent's asylum application that was knowingly fabricated because while he initially stated that Mr. Mafuidi rather than Mr. Kabongo prepared his asylum application, his affidavit asserted otherwise, and his affidavit does not specifically state that the contents of his asylum application are his own." The IJ, a bit more specifically, stated that "[a]t a minimum, the deliberate fabrication is the preparer's name . . . that being the name Eric Mafuidi." The preparer's name alone does not, however, "materially bolster" Limbeya's claim. It is an administrative part of the application rather than an element of Limbeya's asylum claim. See 8 U.S.C. § 1101(a)(42)(A) (An alien petitioning for asylum must prove past persecution or a well-founded fear of future persecution due to one of the bases enumerated in the statute.); see also Black's Law Dictionary 597 (9th ed. 2009) (defining "element" as "[a] constituent part of a claim that must be proved for the claim to succeed"). And though Limbeya did not explicitly state the words on the application were his own, he also did not admit to deliberately fabricating any of them but the preparer's name and address. In his affidavit, Limbeya stated, "I contacted [Kabongo] in 2005 and related to him my testimony of the events I accounted in Congo and asked him to translate it into English for me." And "[a]fter he had translated my asylum application testimony in English, he sent me a complete copy and I signed the application forms."

On appeal, the government attempts to deconstruct the BIA and IJ's decisions: the preparer's name is material in that it calls into question the veracity of material elements of Limbeya's claim. According to the government, after Limbeya admitted he lied about who prepared his application, "the agency was left with a void about

whether the claim contained in Limbeya's application was actually his own." This void "call[ed] into doubt the veracity of [Limbeya's] claim," rendering his lie material. At oral argument, the government stated simply, "credibility is always material."

Applied broadly, this approach eliminates the distinction between frivolousness and adverse credibility determinations. But "a finding of frivolousness does not flow automatically from an adverse credibility determination." In re Y-L-, 24 I. & N. Dec. at 156 (quotation omitted). Frivolousness requires the IJ to find the applicant deliberately fabricated a *material element* of his application.[3] Credibility determinations, on the other hand, can be based on "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). This language was added as part of the REAL ID Act, enacted in 2005. Prior to the REAL ID Act, the trier of fact had to find a nexus between inconsistencies and the "heart of the claim" to make an adverse credibility determination. In re J-Y-C-, 24 I. & N. Dec. 260, 265 (BIA 2007). Post-2005, what differentiates frivolousness and credibility determinations is the nature of the falsehood. Under the government's reading, *any* falsehood could be found "material" simply because it casts doubt on the veracity of the application generally.

The BIA did not explicitly adopt this broad approach and we decline to attribute it to the agency. We are concerned, however, that neither the BIA nor the IJ adequately explained or supported the frivolousness determination in this case. An

---

[3]Limbeya also argues that he timely recanted his misrepresentation, which "ameliorated the negative consequences of a frivolousness finding." However, he did not exhaust this issue. Limbeya only argued to the BIA that his alleged recantation undercut the IJ's adverse credibility finding. See Martinez Carcamo v. Holder, 713 F.3d 916, 925 (8th Cir. 2013) ("A petitioner has not exhausted administrative remedies with respect to a particular issue if he fails to raise [it] when he appeals to the Board." (quotation omitted)).

IJ "must provide cogent and convincing reasons for finding by a preponderance of the evidence that an asylum applicant knowingly and deliberately fabricated material elements of the claim." In re Y-L-, 24 I. & N. Dec. at 158. "These findings should not simply be left to be inferred or extrapolated . . . ." In re B-Y-, 25 I. & N. Dec. 236, 241 (BIA 2010). Similarly, "the Board must articulate a sufficient basis for its decision to enable meaningful review." Sandoval v. Holder, 641 F.3d 982, 983 (8th Cir. 2011) (citing SEC v. Chenery Corp., 332 U.S. 194, 196–97 (1947)). A clear explanation from the agency is particularly important in this context given that "[a] determination that an applicant has submitted a frivolous asylum application carries serious consequences." Ignatova, 430 F.3d at 1214. An alien who files a frivolous application "shall be permanently ineligible for any benefits" under the Immigration and Nationality Act. 8 U.S.C. § 1158(d)(6). For Limbeya, this frivolousness finding rendered him ineligible for adjustment of status based on his marriage to a United States citizen.[4] See 8 C.F.R. § 204.2(a). Because we find the agency did not adequately explain its determination, we remand to the Board with instructions to reconsider and clarify the frivolousness determination.

## III. Conclusion

Accordingly, we grant Limbeya's petition for review, vacate the decision of the BIA, and remand for further proceedings.

—————————————————————

---

[4]Limbeya argues his application for adjustment of status renders the preparer's name—and indeed his entire asylum application—immaterial. We note for remand, however, that a misrepresentation in an asylum application is not immaterial simply because the alien is no longer seeking that form of relief or, as in Limbeya's case, because he is seeking an additional form of relief. See In re X-M-C-, 25 I. & N. Dec. 322, 326 (BIA 2010) (holding that withdrawing an asylum application does not prevent a finding of frivolousness because doing so would allow an alien to "escape the consequences deliberately chosen by Congress to prevent such abuse of the system").