RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WISAM A. YOUSIF,

                       *Petitioner,*

    *v.*

LORETTA E. LYNCH, Attorney General,

                       *Respondent.*

No. 14-3507

On Petition for Review of a Decision of
the Board of Immigration Appeals.
No. A056 032 369 – Detroit.

Decided and Filed: August 7, 2015

Before: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Marshal E. Hyman, Russell Reid Abrutyn, MARSHAL E. HYMAN & ASSOC., PC, Troy, Michigan, for Petitioner. Leslie McKay, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

### OPINION

_____

GRIFFIN, Circuit Judge. Petitioner Wisam Yousif is a native and citizen of Iraq and a Chaldean Christian. After entering the United States, Yousif filed an application for asylum and withholding of removal in May 2007. The immigration judge ("IJ") adjudicated the claims four years later, in December 2011. By that time, respondent attorney general conceded that conditions in Iraq for Chaldean Christians were so turbulent that Yousif was entitled to

withholding of removal because there was a clear probability that he would be persecuted based on his religion if he was returned to Iraq. The IJ agreed and granted Yousif withholding of removal.

However, the IJ denied Yousif asylum, ruling that Yousif had filed a "frivolous" asylum application, *see* 8 U.S.C. § 1158(d)(6), by deliberately fabricating one of its "material elements." 8 C.F.R. § 1208.20. Specifically, the IJ found that Yousif had falsely claimed in his application that he had experienced past incidents of persecution. Thus, despite the fact that the IJ granted Yousif withholding of removal based on his status as a Chaldean Christian, the IJ denied Yousif's asylum application as frivolous. The Board of Immigration Appeals (the "Board") affirmed the IJ's ruling.

Yousif petitions for review of the denial of his asylum claim. Observing that generally the burden of proof is more onerous in obtaining withholding of removal than asylum, Yousif asserts that his misrepresentations about his past experiences were immaterial to his asylum application because he would have been eligible for asylum based on his status alone as a Chaldean Christian, regardless of whether he personally had been persecuted. Because the IJ did not determine whether, at the time that Yousif submitted his application, contemporary conditions in Iraq were so dangerous for Chaldean Christians that Yousif would have been eligible for asylum based solely upon his religion, the IJ failed to determine whether Yousif's misrepresentations were material to his application when they were made. We therefore grant the petition, vacate the Board's decision, and remand for further proceedings.

I.

In 2001, Yousif married his first cousin—who lived in the United States and had just become a United States citizen—while she was visiting her extended family in Iraq. On the strength of that marriage, Yousif was admitted to the United States in 2002 as a conditional permanent resident. In June 2004, Yousif and his wife jointly filed a Form I-751 petition to remove the conditions on his status with the United States Citizenship and Immigration Services ("USCIS"). Neither Yousif nor his wife appeared for their subsequently scheduled interview with USCIS, and USCIS denied the joint petition and terminated Yousif's lawful permanent resident status effective in August 2004. Yousif subsequently petitioned USCIS for a waiver of

the joint-filing requirement, asserting that he and his wife had divorced after his immigration to the United States. The pertinent statutes and regulations allow for a waiver of the joint-filing requirement if, among other things, the non-citizen would suffer extreme hardship if removed or if the marriage was entered into in good faith and ended through no fault of the non-citizen. *See Matter of Munroe*, 26 I. & N. Dec. 428, 431 (BIA 2014).[1] USCIS, however, determined in July 2010 that Yousif's marriage was not bona fide—given that he and his wife had never commingled assets, shared a residence, or consummated the marriage—and that he had failed to establish that he would suffer extreme hardship if returned to Iraq.

Meanwhile, the Department of Homeland Security ("DHS") filed in immigration court a notice to appear charging Yousif as removable under 8 U.S.C. § 1227(a)(1)(D)(i), based upon the termination of his conditional permanent resident status. In May 2007, Yousif appeared before the IJ, admitted the factual allegations in the notice to appear, and requested asylum, withholding of removal, and protection under the Convention Against Torture (the "CAT"). Yousif filed a written asylum application in June 2007. In it, he represented that he sought asylum on the basis of his status as a Chaldean Christian. Among other incidents of violence perpetrated in Iraq against his family because of their ethnicity and faith, Yousif's application claimed that "[w]hile I was in the Iraqi military in 1996, I was threatened by my superior, Seargant [sic] Nakib Najim, to convert to Islam and follow his orders, or else I would be placed in prison. He hit me with a stick on the face and smacked me with his hands." Yousif's application also claimed that, in 2004, "Islamic extremists" went to his family's home in Iraq, "tied my father up in the living room, poured gasoline on him and burned him to death."

Having renewed in immigration court his failed I-751 petition for a waiver of the joint filing requirement, Yousif appeared before the IJ on November 9, 2010. At that hearing, DHS conceded that, as a Chaldean Christian, Yousif was entitled to withholding of removal due to extant country conditions. Regarding Yousif's asylum application, however, the IJ noted that

---

[1]A non-citizen who immigrates on the strength of a less-than-two-year-old marriage to a citizen spouse is eligible for permanent residency on a conditional basis. *See* 8 U.S.C. § 1186a(a)(1). To remove the conditional basis on the non-citizen's status, the spouses must timely file a joint petition to DHS. *See* 8 U.S.C. § 1186a(c)(1); *Johns v. Holder*, 678 F.3d 404, 405 (6th Cir. 2012). If a joint petition cannot be filed, the non-citizen may request a waiver of the joint-filing requirement, and DHS may "in [its] discretion" remove the conditional status of a non-citizen who—among other possibilities—demonstrates extreme hardship or who married in good faith but was later divorced. 8 U.S.C. § 1186a(c)(4); *see* 8 C.F.R. § 1216.4(c) (noting factors to be considered when adjudicating the petition); *Matter of Munroe*, 26 I. & N. Dec. at 430–31.

Yousif's application contained some discrepancies and warned Yousif of the consequences of filing a frivolous application for asylum.

The IJ continued the hearing twice, giving Yousif additional opportunities to support his assertions that he and his family had been brutalized because of their faith and ethnicity. Each time, however, Yousif presented evidence that introduced new inconsistencies into his story. His description of his military service, for example, was altered to reflect that his superior officer "wanted to make me his military butler" and threw him in jail "for not following orders," and that Yousif "was asked numerous times to convert to Islam" but "was not punished" for refusing to do so, instead being "just more or less ignored." And after the IJ observed that Yousif's father's death certificate ascribed his demise to a kerosene "accident" and had been only partially completed, Yousif submitted a different death certificate bearing a different certificate number and attributing the death to a "[f]ire that had taken a[sic] place at the house." Subsequently, Yousif testified that the death occurred in his father's "shop."

After reviewing all of the evidence, the IJ issued an oral decision in December 2011 in which he found that Yousif had lied about several items material to his application and had therefore filed a frivolous application. Specifically, after exhaustively recounting Yousif's conflicting testimony and documentary evidence, the IJ concluded that Yousif's story about his military service had been "made up out of whole cloth" and that it was material to Yousif's asylum application because Yousif "obviously thought if he put this in there the chance of him getting asylum would be greatly increased." The IJ also found that "there is no credible evidence that [Yousif's] father's demise was anything but an accident," and concluded that Yousif's assertion that his father had been killed by terrorists was "also made [up] out of . . . nothing." In the alternative, the IJ also concluded that Yousif had not demonstrated that his marriage to his cousin was anything more than a sham, was not entitled to a waiver of the joint filing requirement based on extreme hardship, and would not merit asylum as a matter of discretion, even if he had not filed a frivolous application.

Nevertheless, because DHS conceded that Yousif's status as a Chaldean Christian entitled him to withholding of removal, the IJ granted Yousif's application for withholding of removal, notwithstanding the denial of his application for asylum. The IJ noted that in

November 2010 DHS did not object to withholding of removal because there was "a pattern or practice of persecution against Chaldeans and Christians in Iraq at that particular time" Further, the IJ agreed with the government that its position was "rightly taken . . . that the respondent, as a Chaldean Christian, would be more likely than not to be persecuted upon his return to today's Iraq." The IJ also denied Yousif's I-751 petition for waiver of the joint-filing requirement and denied Yousif's CAT claim as moot.

Yousif appealed the denial of his asylum claim to the Board, arguing that the IJ's decision was not supported by the evidence, and that any misrepresentations he had made were immaterial to his asylum application. However, the Board affirmed the IJ's decision, concluding that a preponderance of the evidence supported the IJ's frivolousness finding, that Yousif's frivolous asylum application barred his eligibility for any of the discretionary relief that he requested, and that Yousif would not be entitled to discretionary relief even if he had not filed a frivolous application. Yousif now petitions for review.

II.

In his petition, Yousif challenges the ruling that he filed a frivolous asylum application. A finding of a frivolous application carries catastrophic consequences: "If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A) [of the consequences of filing a frivolous asylum application], the alien shall be permanently ineligible for any benefits under this chapter." 8 U.S.C. § 1158(d)(6). In this context, "frivolousness" denotes deliberate fraud, not mere triviality or legal insufficiency. *See Matter of Y–L–*, 24 I. & N. Dec. 151, 155 n.1 (BIA 2007). "[A]n asylum application is frivolous," according to the statute's implementing regulation, "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20.

Because a finding of frivolousness is the veritable "'death sentence' of immigration proceedings," an IJ is permitted to make such a finding only after complying with several procedural safeguards. *Alexandrov v. Gonzales*, 442 F.3d 395, 398 n.1 (6th Cir. 2006) (quoting *Muhanna v. Gonzales*, 399 F.3d 582, 588 (3d Cir. 2005)). Most notably, a finding of frivolousness requires:

(1) notice to the alien of the consequences of filing a frivolous application, (2) a specific finding by the IJ or the BIA that the alien knowingly filed a frivolous application, (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated, and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

*Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (citation omitted); *see also* 8 C.F.R. § 1208.20; *Khadka v. Holder*, 618 F.3d 996, 1002 (9th Cir. 2010); *Matter of B–Y–*, 25 I. & N. Dec. 236, 239–43 (BIA 2010); *Matter of Y–L–*, 24 I & N Dec. at 155.

When reviewing a frivolousness finding, we review questions of law de novo and uphold factual findings if they are supported by substantial evidence. *See Ceraj*, 511 F.3d at 588; *see also Kulakchyan v. Holder*, 730 F.3d 993, 995 (9th Cir. 2013). In immigration cases, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), meaning that this court may overturn the IJ's factual findings only if "the evidence not only *supports* [reversal], but *compels* it," such that no reasonable factfinder could have made the finding that the IJ did. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). "Where the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009).

III.

Yousif does not dispute that he received the procedural prerequisites necessary under *Ceraj*; he contends only that substantial evidence does not support the finding that his allegedly false representations were material. Specifically, Yousif reiterates that his representations were not material to his application "because they did not advance the merits of his [asylum] claim," which was based upon his status as a Chaldean Christian.

A.

Yousif's asylum claim depended upon whether he qualified as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). *See Kouljinski v. Keisler*, 505 F.3d 534, 541 (6th Cir. 2007). Ordinarily, there are two ways in which an applicant may qualify as a refugee: either by demonstrating that she has a "well-founded fear" of future persecution on account of a protected

characteristic or by demonstrating that she has suffered past persecution—which gives rise to a rebuttable presumption that she has a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b). These routes to refugee status are alternative. Thus, if Yousif established his eligibility for asylum because he had a "well-founded fear of persecution" for reasons unrelated to the personal experiences of himself and his family, then any misrepresentations about having suffered past persecution would be unnecessary to his asylum claim. *See Matter of B–Y–*, 25 I. & N. Dec. at 244.

There is no dispute that Yousif is a Chaldean Christian and that his status as a Christian alone entitles him to withholding of removal, given that there is "a clear probability" that he would be subject to future persecution if returned to contemporary Iraq. *See* 8 U.S.C. § 1231(b)(3); *INS v. Stevic*, 467 U.S. 407, 413 (1984); *id.* at 424 (the clear-probability standard asks "whether it is more likely than not that the alien would be subject to persecution"). But the IJ nonetheless found that Yousif's asylum application was "frivolous" because Yousif had lied about having suffered persecution in the past.

As Yousif observes, these findings appear contradictory. An asylum claim and a withholding claim require consideration of "the same factors" and proof of the same underlying facts about an applicant's probable persecution, *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003), *abrogated on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006), and because the latter imposes a higher burden of proof upon an applicant, it is ordinarily more difficult to obtain withholding of removal than it is to win asylum. *See Zhao v. Holder*, 569 F.3d 238, 246 n.10 (6th Cir. 2009); *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006). If an applicant has a greater-than-fifty-percent chance of being subjected to future persecution and is therefore eligible for withholding of removal, then he necessarily has a well-founded fear of persecution and has no need to prove past persecution in order to establish eligibility for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987).

B.

The relationship between the two types of relief is central to Yousif's challenge to the frivolousness ruling. The mere fact that an asylum applicant has lied in his application is not enough to support a frivolousness finding; "'a finding of frivolousness does not flow

automatically from an adverse credibility determination.'" *Limbeya v. Holder*, 764 F.3d 894, 900–01 (8th Cir. 2014) (quoting *Matter of Y–L–*, 24 I. & N. Dec. at 156). The falsehood must be "material" to the application. *See* 8 C.F.R. § 1208.20.

The accepted test in the context of false statements to immigration officers is that "a concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted); *see United States v. Gaudin*, 515 U.S. 506, 509 (1995). At least one other circuit has suggested that "fabricated facts that 'materially bolster' an asylum claim [are] sufficient to support a frivolousness finding." *Limbeya*, 764 F.3d at 900 (citation omitted). And according to the Board, a misrepresentation is material for purposes of 8 C.F.R. § 1208.20 if it would "advance the merits of [an asylum] claim one way or the other." *Matter of B–Y–*, 25 I. & N. Dec. at 244.

The upshot is that a misrepresentation in this context is material only if it had the potential to make a difference to the outcome of the asylum application. *See Kungys*, 485 U.S. at 770. At minimum, the falsehood must measurably aid in establishing one of the elements of the claim. *See id.* at 774 (falsification of date and place of birth in a naturalization petition was immaterial because the falsities were not "relevant to his qualifications for citizenship"); *Limbeya*, 764 F.3d at 900–01 (falsifying the preparer's name on an asylum application was immaterial because the falsity did not help establish an element of the asylum claim); *Matter of B–Y–*, 25 I. & N. Dec. at 244 (inconsistencies about details ancillary to incidents of claimed persecution were immaterial). In arguing that he was eligible for asylum regardless of whether he had experienced past persecution, Yousif contends that his alleged false statements about his past experiences made no difference to the outcome of his application and were therefore immaterial.

C.

However, the Board ruled that Yousif's misrepresentations were material as long as they falsely allege past persecution on the basis of a protected characteristic. In many cases, this shorthand test may well suffice, given that asylum applications often depend upon whether the applicant has been persecuted in the past such that he has a well-founded fear of being

persecuted again in the future. *See* 8 C.F.R. § 1208.13(b)(1). But the problem with this approach as applied to Yousif's unusual circumstances is that it confounds both the accepted meaning of "material" and the statute's requirement that the application be "frivolous." *See* 8 U.S.C. § 1158(d)(6); 8 C.F.R. § 1208.20.

After all, if Yousif was eligible for asylum on the basis of his Chaldean Christian status alone at the time that he filed his application, then it is difficult to discern how his plainly meritorious application could be considered "frivolous" under the language of the statute, regardless of how many additional lies it contained. Ordinarily, the minimum qualification of a "frivolous" filing is that it "lack[ ] an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). *See also Webster's Unabridged Dictionary of the English Language* 769 (2d ed. 2001) (something is frivolous if it "lack[s] any serious purpose"); Black's Law Dictionary 783 (9th ed. 2009) (frivolousness denotes something "not reasonably purposeful"). *Chevron*[2] allows an agency discretion in its statutory interpretation, but not to the extent of turning an indisputably meritorious asylum application into a "frivolous" one because of misrepresentations not affecting the ultimate decision. *See Negusie v. Holder*, 555 U.S. 511, 516 (2009) (*Chevron* deference applies to the Attorney General's interpretation of the INA). Because of the difficulty of squaring the Board's analysis here with the statutory language, it does not matter that "the Board's construction of its *own* regulations, namely the meaning of 'material' elements of a claim" is "entitled to near-conclusive *Seminole Rock* deference." *Ghazali v. Holder*, 585 F.3d 289, 293 (6th Cir. 2009) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Even if the Board's decision in Yousif's case could be deemed as an agency determination that a misrepresentation is material as long as it relates to a claimed past incident of persecution—irrespective of whether the past incident would affect the merits of the asylum determination—such a determination still must comply with the statutory text and relevant precedent. *See Matter of B–Y–*, 25 I. & N. Dec. at 244.

Our closest case is *Ghazali*, where we held that a misrepresentation could be material to an asylum application even if the application was time-barred. 585 F.3d at 291–93. Under *Ghazali*, in other words, a misrepresentation may be material for purposes of a frivolousness

---

[2]*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

finding even where the asylum application is barred on a different ground, such that the misrepresentation could have no effect on the merits of the application. *Id.* at 294.

However, *Ghazali* does not control the present case. The difference is that *Ghazali* (and Board precedent to similar effect, such as *Matter of X–M–C–*, 25 I. & N. Dec. 322, 324–26 (BIA 2010)) involved an asylum application that was meritless or mooted on grounds unrelated to the misrepresentation, not an application that was indisputably meritorious on grounds unrelated to the misrepresentation. If an application must fail for more than one reason, it may be reasonable under *Chevron* for the Board to pick one of its multiple fatal flaws—purposeful falsity, as opposed to a time-bar, for example—to support a determination that the application is "frivolous" under 8 U.S.C. § 1158(d)(6). But it is much more difficult to justify a determination that an application is "frivolous" due to incidental falsity if the application unquestionably has merit, irrespective of the falsity.

*Ghazali* reflects this awareness, explaining that its holding fits best within the context of an asylum application that had no prospect of success in the first place: "[I]mmigration judges frequently offer a host of merits-related grounds for rejecting an asylum application, and they should be permitted to do so without compromising their authority to make a frivolousness finding when appropriate." 585 F.3d at 294. The purpose of § 1158(d)(6) is to deter individuals from soaking up resources "that could be put to use addressing serious claims by honest applicants." *Pavlov v. Holder*, 697 F.3d 616, 618 (7th Cir. 2012). It serves neither the statute's language nor its purpose to apply it to an asylum application that—far from being frivolous—unquestionably has merit. In such a scenario, the applicant is not simply wasting the agency's time or spinning out the process so that he can remain stateside a little longer; he is in fact eligible for refugee status. Deliberately lying to an immigration officer is a serious matter and—as the IJ alternatively found—might possibly support a denial of asylum as a matter of discretion. *See Kouljinski*, 505 F.3d at 542. But if an individual qualifies as a refugee and is eligible for asylum, then § 1158(d)(6) by its own terms does not punish the inclusion of an irrelevant lie in her application with a lifetime forfeiture of discretionary immigration relief. *See Limbeya*, 764 F.3d at 900–01.

Board precedent similarly recognizes that the implementing regulation *adds* another layer of inquiry to the statutory text; it does not take one away. Due to the severe consequences of a frivolousness finding, an application is frivolous only if it contains a deliberate fabrication that was capable of influencing the asylum decision, *see* 8 C.F.R. § 1208.20; *Kungys*, 485 U.S. at 770, and if the application—after the falsity is excised—is "legal[ly] insufficien[t]." *Matter of Y–L–*, 24 I. & N. Dec. at 155 n.1. That is at least part of the reason why "a finding of frivolousness does not flow automatically from an adverse credibility determination." *Limbeya*, 764 F.3d at 900–01 (quoting *Matter of Y–L–*, 24 I. & N. Dec. at 156). The lie must actually matter.

IV.

Nevertheless, Yousif is incorrect in asserting that a frivolousness finding is never compatible with eventual success on a withholding claim. As we have previously held, whether a misrepresentation is material to an asylum application depends upon whether it had the ability to influence the resolution of the application "at the time the application was made." *Ghazali*, 585 F.3d at 293 (internal quotation marks omitted). In other words, Yousif's asylum application could have been frivolous *when it was filed*, notwithstanding the fact that his withholding claim was meritorious *when it was adjudicated*.

The answer to Yousif's contrary position has two parts. First, even though the burden of proof is higher for a withholding claim, it is not always more difficult to obtain withholding of removal than it is to achieve asylum. That is because asylum is discretionary relief, *see* 8 U.S.C. § 1158(b)(1)(A), meaning that it can be denied to an applicant—even if he likely will be persecuted if returned to his home country—for any number of reasons unrelated to the merits of his application, including if the application is filed too late, *see* 8 U.S.C. § 1158(a)(2)(B), if the applicant has committed certain crimes, *see* 8 U.S.C. § 1158(b)(2), or if the IJ determines that other "egregious adverse factors" counsel against awarding asylum to an otherwise-eligible refugee, *Kouljinski*, 505 F.3d at 542 (citation omitted).

Withholding of removal, by contrast, is mandatory. Subject to very limited exceptions, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race,

religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see id.* § 1231(b)(3)(B) (providing that withholding does not apply if the applicant participated in persecution, committed a "serious nonpolitical crime," or jeopardizes the security of the United States). Because § 1231(b)(3) implements the "non-refoulement obligation" reflected in Article 33 of the Refugee Convention, the viability of a withholding claim ordinarily depends upon its merits rather than upon procedural prerequisites or the government's good graces. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502–03 (6th Cir. 2007) (citation omitted). *See also Cardoza-Fonseca*, 480 U.S. at 443–44; *Stevic*, 467 U.S. at 421 n.15, 426 & n.20.[3]

In other words, the government may deny asylum as a matter of discretion under § 1158 but nevertheless be forced to withhold removing an applicant under § 1231(b)(3). In fact, the regulation that implements § 1158(d)(6)'s frivolous-application bar specifically observes that "a finding that an alien filed a frivolous asylum application shall not preclude the alien from seeking withholding of removal." 8 C.F.R. § 1208.20. *See also Aziz v. Gonzales*, 478 F.3d 854, 858 (8th Cir. 2007); *Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 112 n.2 (2d Cir. 2006). One way in which this difference between the two forms of relief might be manifested is if country conditions have worsened after the alien filed his initial asylum application. In such a scenario, even if asylum was precluded by some statutory limitation on discretionary relief (as time-barred, for example), the validity of the withholding claim would fluctuate over time: the Attorney General would be precluded from removing the alien as long as—at the time of adjudication—it was more likely than not that the alien, if removed, would be persecuted on the grounds noted in § 1231(b)(3). *See Stevic*, 467 U.S. at 424. *See also* 8 C.F.R. § 1208.24(b) (noting grounds for termination of withholding of removal).

The fact that the two types of relief are not necessarily wedded to each other informs the second part of the answer to Yousif's argument. Because the availability of asylum—unlike withholding of removal—does not necessarily need to correlate to country conditions at the time

---

[3]Perhaps because it is a form of relief that the government has not necessarily acceded to, withholding of removal provides more limited relief than asylum. "Unlike an application for asylum, . . . a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status, family members are not granted derivative status, and it only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country." *Castellano-Chacon*, 341 F.3d at 545.

that the application is adjudicated, whether a misrepresentation is "material" to an application may be determined by reference to the time that the application was filed, rather than to when the application was adjudicated. In our circuit, that is the rule:

> So far as the regulations are concerned, an immigration judge may make [the materiality] finding whenever an alien files a frivolous application, regardless of whether the judge ultimately denies the application on statutory-bar or substantive grounds. The judge simply needs to ensure that the finding relates to a "material" element of the application, one that was material at the time the application was "made."

*Ghazali*, 585 F.3d at 292–93 (citations omitted). Other courts have similarly emphasized that the statute and regulation direct the materiality inquiry to the time at which the application was "made," 8 U.S.C. § 1158(d)(6), and "filed," 8 C.F.R. § 1208.20. *See, e.g.*, *Chen v. Mukasey*, 527 F.3d 935, 940 (9th Cir. 2008). That is why the Board and the courts almost uniformly permit an IJ to make a frivolousness finding as long as the IJ finds that the misrepresentations were material to the application when the application was filed, even if the application was later mooted for some other reason. *See Limbeya*, 764 F.3d at 901 n.4 (applicant seeking additional form of relief); *Kulakchyan*, 730 F.3d at 996 (application withdrawn); *Mei Juan Zheng v. Holder*, 672 F.3d 178, 184–85 (2d Cir. 2012) (application withdrawn); *Ghazali*, 585 F.3d at 293 (application time-barred); *Matter of X–M–C–*, 25 I. & N. Dec. at 324–26 (application withdrawn). *But see Luciana v. Attorney Gen. of U.S.*, 502 F.3d 273, 280–81 (3d Cir. 2007) (misrepresentation was immaterial where application was time-barred).

As the Board has observed, determining materiality as of the time that the application was made aligns with the goals of § 1158(d)(6). *See Matter of X–M–C–*, 25 I. & N. Dec. at 325–26. If an applicant's culpability was not assessed by reference to the time of the lie, then consequences for the lie would depend on the whims of subsequent geopolitical affairs: an applicant could be rescued from the consequences of his materially false asylum application through the sheer good fortune of country conditions taking a sudden turn for the worse while his application was pending. But if § 1158(d)(6)'s punishment "is for making the frivolous application in the first place and lying to an asylum officer after being warned of the consequences," *Chen*, 527 F.3d at 941, then it stands to reason that the sanction should not

depend upon the inconstancies of circumstance but should turn instead upon what the applicant did at the time he did it.  *See Matter of X–M–C–*, 25 I. & N. Dec. at 325–26.

These considerations suggest a resolution to the seeming paradox posed by Yousif's circumstances.  Success on a withholding claim does not necessarily mean that an applicant is entitled to succeed on an asylum claim, and the materiality determination for purposes of a frivolousness finding must be made by reference to when the application was filed as opposed to when it was adjudicated.  Contrary to Yousif's argument, therefore, the different outcomes of his two claims might be explained if country conditions or other circumstances relevant to the withholding claim substantially changed in the interim between the filing of his asylum application and the adjudication of his withholding claim.

V.

The difference between the two types of relief does not on its own explain the IJ's rulings in this case.  Although the government is correct that substantial evidence supports the IJ's finding that Yousif's representations were untrue,[4] neither the IJ nor the Board analyzed whether Yousif's representations were material "at the time the application was made."  *Ghazali*, 585 F.3d at 293 (internal quotation marks omitted).  Instead, they applied a notion of materiality that runs contrary to the definition that the Board has expressed in its own precedent, *see Matter of B–Y–*, 25 I. & N. Dec. at 244, viewing Yousif's misrepresentations as "material" merely because they were false and related to claimed instances of past persecution, not because they had the potential to make a difference to the outcome of his asylum application.

Yousif filed his asylum application in June 2007—more than four years before the IJ issued its withholding ruling in December 2011.  As early as November 2010, the personal experiences of Yousif and his family were irrelevant to his asylum application—he would have qualified as a "refugee" based upon his status as a Chaldean Christian, without more.  To properly analyze whether Yousif's representations regarding his and his family's experiences

---

[4]The evidence does not compel the conclusion that Yousif did not know that he was asserting falsehoods when he claimed in his initial application that he and his family had been persecuted.  *See Ceraj*, 511 F.3d at 588. Nor is Yousif correct that his subsequent amendments to his application sufficed to recant the false statements. Retraction of a materially false application does not necessarily change the fact that a materially false application was "made."  *See Lazar v. Gonzales*, 500 F.3d 469, 478 (6th Cir. 2007); *Matter of X–M–C–*, 25 I. & N. Dec. at 326.

were material to his application at the time that Yousif filed it, the IJ needed to determine whether Yousif would have been eligible for asylum in June 2007 based upon his status as a Chaldean Christian alone.  If not, then Yousif's fabricated tales would have been material to his application.  *See* 8 U.S.C. § 1158(b)(1)(B)(i).  By contrast, if Yousif already had been eligible for asylum in June 2007 solely on the basis of his status as a Chaldean Christian, then none of his lies about his past experiences would have made it any more likely that he would obtain asylum.  His status alone would have guaranteed his eligibility for asylum, and his efforts to fabricate his application were immaterial.  *See Limbeya*, 764 F.3d at 900.  Notably, the government bears the burden of proving frivolousness before the IJ.  *See Matter of B–Y–*, 25 I. & N. Dec. at 240.

The IJ made no finding regarding whether Yousif merited asylum based on his Chaldean Christian status in June 2007.  The IJ reviewed only the 2009 and 2010 Iraq country conditions reports and opined that "much of the evidence with respect to country conditions is not relevant given the Government's concession with respect to a pattern and practice of persecution of Chaldean Christians."  The IJ failed to identify whether conditions in June 2007 were significantly different than they were in 2010, when it was undisputed that Yousif would, more likely than not, be persecuted on the basis of his status alone.

Instead, the IJ appears to have rejected Yousif's argument that his "inconsistencies do not go to anything material" largely because the IJ believed that his story was wholly fabricated:

> [Yousif's argument that the inconsistencies are immaterial] is not true as his story was made up out of nothing and asylum is discretionary.  He went out of his way to change the story from the application as originally proffered to when he signed his application after the second time he was warned of it being frivolous and then he changed his story each and every time he told the story.  Because this was a discretionary issue, talking about what happened to him before the regime changed on April 9, 2003 obviously he thought if he put this in there the chance of him getting asylum would be greatly increased.  Well, unfortunately, because it goes [to] a discretionary matter, even though the country conditions have changed, it is a material aspect of his claim and, hence, the respondent has filed a frivolous application for asylum.

In this respect, the IJ was operating with the wrong view of materiality.  The materiality inquiry asks whether the lie was capable of changing the outcome, not whether it was made out of whole cloth.  The statement might be entirely fictional but still have no effect on the outcome—for

instance, if the applicant is indisputably eligible for asylum for other reasons. Nor does the fact that asylum is discretionary render Yousif's lies material. The question relevant to the frivolousness inquiry is whether Yousif's misrepresentations measurably aided his argument that he was a "refugee" eligible for asylum, not whether the IJ could exercise its discretion to deny Yousif's application even if he was eligible for relief. *See Limbeya*, 764 F.3d at 900–01.

The same error occurred later in the IJ's reasoning. In finding that Yousif had fabricated tales of his brother being attacked by thugs, the IJ opined that the story was "a material aspect of [Yousif's] claim because he claims he would be attacked based upon his . . . relationship to his family." But Yousif's asylum application indisputably requested relief on the basis of his ethnicity and religion, and his stories of his family's experiences are entirely beside the point if Yousif would have been eligible for asylum anyway due to his status as a Chaldean Christian.

The Board likewise concluded that the misrepresentations were material solely because they related to Yousif's "religion, the basis for his asylum application." Despite Yousif's argument on brief that his past experiences were immaterial to his asylum application, the Board failed to analyze whether, at the time of his filing, Yousif would have been qualified as a refugee on the basis of his religious and ethnic status alone, irrespective of his or his family's past experiences.

In failing to explain how Yousif's misrepresentations "advance[d] the merits" of his asylum claim when it appears that he would have been eligible for asylum regardless of his past experiences, the Board failed to hew to its own precedent. *Matter of B–Y–*, 25 I. & N. Dec. at 244. There may be an easy explanation—if, for instance, country conditions changed drastically enough between 2007 and 2011 such that Yousif's status as a Chaldean Christian took on new import in the interim. But neither the IJ nor the Board pointed to any such evidence nor attempted to do so.

In view of the text of § 1158(d)(6) and the drastic consequences of the IJ's frivolousness finding, we require a reasoned explanation from the Board for affirming the IJ's ruling. On the current state of the record, it is clear that the IJ failed properly to determine whether Yousif's false statements were material to his application at the time that it was made. We therefore remand to the Board with instructions to reconsider and clarify its frivolousness finding,

explaining whether and how the text of § 1158(d)(6) and its implementing regulations apply to Yousif's atypical circumstances. *Cf. Limbeya*, 764 F.3d at 901; *Chen*, 527 F.3d at 943; *Mei Juan Zheng v. Mukasey*, 514 F.3d 176, 184 (2d Cir. 2008).

## VI.

For these reasons, we grant the petition for review, vacate the decision of the Board, and remand for further proceedings.