**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0183n.06

Case No. 15-3836

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 31, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OMARI TOYI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, U.S. Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION. |
| | ) | |

BEFORE: KETHLEDGE, DONALD, and ROTH, Circuit Judges.*

**BERNICE BOUIE DONALD**, **Circuit Judge.** Omari Toyi, a native and citizen of Burundi, petitions this Court for review of the Board of Immigration Appeals' (BIA) decision affirming an immigration judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3); 8 C.F.R. §§ 1208.16(c), 1208.18. Respondent, the government, argues that the Court lacks jurisdiction under 8 U.S.C. § 1158(a)(3) to review the BIA's denial of asylum and that Toyi failed to meet his burden of proof to be entitled to withholding of removal. For the following reasons, we AFFIRM the denial of asylum and withholding of removal.

---

*The Honorable Jane J. Roth, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

I.

Petitioner Omari Toyi was raised as a member of the Hutu community in Burundi. As a native and citizen of Burundi, Toyi grew up around Bujumbura, the country's capital, where he claimed he fell victim to the persecution committed by the Tutsi members of the Burundi government against Hutus.

In his asylum application, Toyi alleged that, in 1989, the Tutsis violently attacked his Hutu community, killing both his parents and burning down his home. He described how the terror of the gunshots caused him to run away and hide during the attack. After the attack ended, he returned home, or to what was left of it, where, his neighbors told him that his parents were dead and that the Tutsis had entered his family home with guns. Based on what the neighbors told him, Toyi suspected that they both had been shot.

Toyi claimed that, following his parents' death, he suffered three instances of torture and abuse by the Tutsis: once in 1994, again in 1998, and once again in 2002. He claimed that, in 1994, he was beaten up by some Tutsis in his neighborhood. In 1998, he was in a central market in Bujumbura where he was attacked by a group of young Tutsis and told that they were attacking him because he was a Hutu. Toyi claimed that again, in 2002, as he was leaving the central market, he was picked up by some Tutsis, including a soldier, who accused him of feeding Hutu rebels and helping the Hutu political party, the Frodebu. Although Toyi denied the allegations and told the Tutsis that he was a mere "supporter of the Hutu community," the Tutsis threw him in a prison in Ngozi province.

Toyi claimed that the prison was very crowded, filled with inmates who were all Hutus and guards who were all Tutsis. While in prison, he claimed that he was under constant threat of being beaten by the guards. He eventually managed to escape the prison after a fellow inmate

broke down the door. Afterwards, Toyi claimed that he traveled for two weeks in small carts to reach the border between Burundi and Tanzania. In Tanzania, he allegedly obtained a passport from somebody from Bujumbura and used it to travel on a boat to Buffalo, New York, arriving in the United States on August 24, 2002. He further claimed that when he arrived, a "guy from the boat" helped him exit the boat and enter the United States. He does not claim that he went through U.S. Customs nor that he was admitted. He has no documentation indicating the date of his entry because he allegedly lost the passport and cash in a taxicab.

On December 19, 2002, Toyi filed an I-589 application form for asylum and for withholding of removal with the U.S. Citizenship and Immigration Services (USCIS). The asylum officer assigned to Toyi's case, Daniel McCarthy, met with Toyi informally to discuss his application and his reasons for seeking asylum. Afterwards, the officer prepared an "Assessment to Refer," a document summarizing the interview, attached it to the asylum application, and referred the application to the immigration judge ("IJ") for formal adjudication. In the Assessment to Refer, McCarthy noted the dates of Toyi's entry and the filing of the asylum application and expressly stated that Toyi had "established by clear and convincing evidence that his request for asylum was filed timely." A.R. 236.

On July 16, 2014, the IJ admitted the asylum officer's notes and Assessment to Refer into the record over Toyi's objection, and, as an initial matter, found Toyi removable under 8 U.S.C. § 1182 (a)(6)(A)(i), as charged. The IJ further issued an oral decision denying Toyi's applications for relief and protection and ordered his removal to Burundi. The IJ also concluded that Toyi was not credible, highlighting several discrepancies between his written narrative and his oral interview statements. Specifically, the IJ found that Toyi inconsistently described whether his parents were both killed on the same day, whether he knew how his father was

killed, whether he saw his mother's corpse, and the number of times he was physically harmed by the Tutsis in Burundi. Even if taken as credible, Toyi's statements, the IJ concluded, do not establish his date of entry into the United States, and thus, that he timely filed his asylum application within one year of his entry.

Toyi appealed the IJ's decision before the BIA, arguing that the IJ erred in finding him not credible and denying him relief and protection. On July 9, 2015, the BIA dismissed the appeal and affirmed the IJ's decision after finding that Toyi failed to show by clear and convincing evidence that he timely applied for asylum and that the IJ's adverse credibility finding was not clearly erroneous. The BIA dismissed Toyi's claims and affirmed the IJ's findings. In this Court, Toyi now contends on appeal that the BIA erred in its finding that Toyi failed to fulfill his burden of proof in demonstrating that he timely applied for asylum and is entitled to withholding of removal.

II.

We review the BIA's decision as a final agency determination and review all legal determinations made by the IJ and the BIA de novo. *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014). Alternatively, we review factual findings deferentially under a substantial evidence standard, upholding factual findings only if they are "'supported by reasonable, substantial, and probative evidence on the record.'" *Id.* (quoting *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006)). This means that we only reverse the BIA's factual findings if there is evidence that "not only supports a contrary conclusion, but indeed compels it," where the finding is "manifestly contrary to law." *Id.* (citation omitted); *see* 8 U.S.C. § 1252(b)(4)(C).

A.

Toyi argues that the BIA erred in denying him asylum in two ways: (1) by finding his application for asylum untimely where the asylum officer expressly referred his application to the IJ as timely; and (2) by finding his statements describing the alleged persecution lacking in credibility.

Federal courts ordinarily lack jurisdiction to review the BIA's determination that an asylum application is untimely. 8 U.S.C. § 1158(a)(3); *Mandebvu*, 755 F.3d at 425. The Immigration and Nationality Act ("INA") requires an asylum application to be "filed within 1 year after the date of the [applicant]'s arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Under the REAL ID Act of 2005, the only way we can retain jurisdiction to review applications that were denied for untimeliness is if the applicant "seeks review of constitutional claims or matters of statutory construction." *Mandebvu*, 755 F.3d at 425 (internal citations omitted). To meet this requirement, such matters or claims must consist of nondiscretionary legal issues of statutory interpretation or mixed questions of law and fact so long as the facts are undisputed. *See Huang v. Mukasey*, 523 F.3d 640, 650 (6th Cir. 2008) (explaining that 8 U.S.C. § 1158(a)(3) bars our review of asylum applications for untimeliness when the appeal seeks review of a discretionary or factual question).

Here, Toyi contends that it is undisputed that he timely filed his application for asylum, because, in his Assessment to Refer, his asylum officer stated that Toyi "established by clear and convincing evidence that his request for asylum was filed timely." A.R. 236. He argues that the IJ and the BIA were "estopped" from making the contrary factual finding that Toyi failed to establish the timeliness of his asylum application. However, an "Assessment to Refer may in fact be sufficiently reliable on certain points but not sufficiently reliable on others." *Koulibaly v. Mukasey*, 541 F.3d 613, 621 (6th Cir. 2008). Toyi's argument that the IJ and the BIA had to

defer to the conclusions contained in the Assessment to Refer gets the law backwards. The BIA is not permitted, much less required, to blindly accept the conclusions contained in an Assessment to Refer. *See id.*

Here, the BIA adopted the IJ's factual finding that Toyi failed to show that he applied for asylum within one year of arriving in the United States. Under 8 U.S.C. § 1158(a)(3), the BIA's determination is insulated from judicial review. This Court therefore lacks the authority to review Toyi's petition as it pertains to his application for asylum.

B.

Next, we turn to the BIA's finding regarding Toyi's request for withholding of removal under the INA and the CAT. To qualify for withholding of removal, an applicant must demonstrate that it is more likely than not that, if removed to a designated country, his "life or freedom would be threatened" on account of a protected ground. INA § 241(b)(3)(A), *codified at* 8 U.S.C. § 1231(b)(3)(A). Regardless of whether the request was made pursuant to the INA or the CAT, we review the BIA's decision on a request for withholding of removal under the same standard. *Huang*, 523 F.3d at 651. Withholding of removal is not discretionary, but mandatory if a petitioner establishes that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(a); *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted). The BIA has defined "persecution" as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Pilica*, 388 F.3d at 950 (internal citation omitted). To be eligible for withholding of removal under the CAT, an applicant must establish that he would be subject to torture by or at the instigation of, or with the consent or

acquiescence of a public official or person acting in an official capacity. *See* 8 C.F.R. § 1208.18(a)(1).

An applicant seeking withholding of removal faces "a more stringent burden than what is required on a claim for asylum." *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005). Unlike with asylum applications, the determination of whether a petitioner is entitled to withholding of removal is based on circumstances existing at the time of adjudication and not at the time of filing. *Yousif v. Lynch*, 796 F.3d 622, 632 (6th Cir. 2015). The Attorney General is precluded from removing a petitioner if at the time of adjudication, it is "more likely than not" that the petitioner, if removed, would be persecuted. *Id.*

Here, the IJ examined a 2013 Burundi human rights report that Toyi submitted for the record and found that the report did not indicate any ongoing threat of persecution or torture against Hutus. The IJ found, rather, that the report tracked positive changes in political conditions in Burundi since the Rwandan Hutu-Tutsi genocide, which suggested efforts toward full integration among the Hutus and the Tutsis. The IJ noted, for example, that the report indicated that the country was getting closer to maintaining equal representation of Tutsis and Hutus in both the military and the government. In turn, the IJ concluded that the report was "devoid of indication that there is an ongoing civil conflict between the Hutu and Tutsis in Burundi." A.R. 59.

In his briefing before this Court, Toyi presented evidence of very recent ethnic killings and political assassinations, not to mention, a United Nations statement describing worsening conditions and warning of mass violence erupting in Burundi. However, none of these documented changes in country conditions that were raised in his briefs were before the BIA. In considering a petition for relief from a final order of removal, we must decide the petition only

on the administrative record on which the order of removal is based[.]"   8 U.S.C. § 1252(b)(4)(A).   Accordingly, we have no authority to take into consideration additional evidence, and we find that the reports already included in the administrative record do not compel a reversal of the BIA's findings.

In light of the recent deteriorating security situation in Burundi, however, Toyi is not helpless in obtaining relief.   When a petitioner discovers new information after the BIA has finalized deportation proceedings, the proper procedure is for the applicant to request the BIA to reopen the proceedings.   8 C.F.R. § 1003.23(b)(3)–(4)(i).   Therefore, Toyi may still file a motion to reopen his immigration court proceedings and to stay his removal because of "changed country conditions," as provided for under 8 C.F.R. § 1003.23(b)(3)–(4)(i).

III.

Based on the foregoing, we **AFFIRM** the BIA's decision denying Toyi asylum and withholding of removal.