# Matter of Keisha MUNROE, Respondent

*Decided October 24, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

For purposes of establishing an alien's eligibility for a waiver under section 216(c)(4)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1186a(c)(4)(A) (2012), the relevant period for determining whether an alien's removal would result in extreme hardship is the 2-year period for which the alien was admitted as a conditional permanent resident.

FOR RESPONDENT: Spiro Serras, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Diane Kier, Associate Legal Advisor

BEFORE: Board Panel: COLE and PAULEY, Board Members; DONOVAN, Temporary Board Member.

DONOVAN, Temporary Board Member:

In a decision dated September 27, 2010, an Immigration Judge found the respondent removable under section 237(a)(1)(D)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(D)(i) (2006), as an alien whose conditional permanent resident status has been terminated. The Immigration Judge also granted the respondent's request for a waiver under section 216(c)(4)(A) of the Act, 8 U.S.C. § 1186a(c)(4)(A) (2006), determining that her removal would result in extreme hardship. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guyana who was admitted to the United States on July 3, 1997, as a conditional permanent resident pursuant to section 216 of the Act, on the basis of her April 11, 1996, marriage to a United States citizen. She was admitted as a conditional permanent resident for a 2-year period. The respondent and her husband separated after about 2 weeks and were divorced on March 24, 1999. She was therefore unable to meet the requirements for filing a joint petition to

remove the conditions on her residence under section 216(c)(1) of the Act. On August 19, 1999, the respondent requested a waiver of the general joint petition requirement, which the United States Citizenship and Immigration Services ("USCIS") denied on August 6, 2004.

On January 13, 2005, the DHS issued a notice to appear charging the respondent with removability under section 237(a)(1)(D)(i) of the Act. While in proceedings on May 31, 2005, the respondent filed a second application for a waiver of the joint petition requirement under section 216(c)(4)(B) of the Act, claiming that she had entered into the now terminated marriage in good faith and was not at fault in terminating the marriage. The USCIS denied her second waiver application on March 8, 2006. The respondent married her current lawful permanent resident husband on May 4, 2007. They have three United States citizen children born in November 2001, December 2004, and September 2007.

On January 17, 2008, the respondent filed a third waiver application under section 216(c)(4)(A) of the Act, this time claiming that she would suffer extreme hardship if she were deported, primarily because she would be separated from her second husband and her children. The USCIS found that the period for determining extreme hardship began on July 3, 1997, when the respondent was granted conditional permanent resident status, and ended on July 3, 1999, when her status automatically terminated. On April 8, 2009, the USCIS denied the respondent's application because the hardship she claimed was not based on circumstances occurring during that 2-year period.

Each time the respondent filed a Petition to Remove Conditions on Residence (Form I-751), the USCIS issued a notice informing her that her conditional permanent resident status was extended for 1 year. Each time the respondent's Form I-751 was denied, the USCIS informed her that her conditional permanent resident status was terminated. She was instructed that her "previously accorded" permanent resident status was terminated on August 6, 2004, March 8, 2006, and April 8, 2009.

Before the Immigration Judge, the respondent conceded that she is removable as charged and sought to renew her request for an extreme hardship waiver under section 216(c)(4)(A) of the Act. The Immigration Judge found that the relevant period for determining extreme hardship began on July 3, 1997. Although she did not specify an end date for the hardship calculation, the Immigration Judge stated that it continued at least until August 6, 2004, when the USCIS denied the respondent's first waiver application. The Immigration Judge therefore considered the claimed hardship related to the respondent's first child, who was born in November 2001. However, because she found that the respondent's period of conditional permanent residence ended on August 6, 2004, the

Immigration Judge did not consider whether there was hardship related to the two children who were born after that date or to the respondent's lawful permanent resident spouse, whom she married on May 4, 2007. Finding that the respondent established eligibility for the waiver, the Immigration Judge granted her application.

## II. ISSUE

The issue on appeal involves the relevant time period for determining extreme hardship for a waiver under section 216(c)(4)(A) of the Act. To decide what that period is, we must address the key sentence of section 216(c)(4)(A), which states: "In determining extreme hardship, the Secretary of Homeland Security shall consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis." For the following reasons, we conclude that the relevant period for determining such hardship is the 2-year period that an alien was admitted for permanent residence on a conditional basis.

## III. ANALYSIS

### A. Statutory Scheme for Conditional Permanent Residents

Interpreting the statute requires an understanding of the statutory scheme that governs conditional permanent resident status. Section 216 of the Act was enacted to deter marriage fraud as part of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 2, 100 Stat. 3537, 3537. It created a system under which aliens who acquire lawful permanent resident status based on a marriage of less than 2 years' duration are granted that status on a conditional basis for 2 years. This system allows the USCIS to check the bona fides of the marriage after the 2-year period to ensure that the marriage was not entered into for immigration purposes. *See Matter of Mendes*, 20 I&N Dec. 833, 835 (BIA 1994).

Section 216 of the Act allows aliens to remove the conditions on their residence in one of two ways. First, within 90 days of the second anniversary of the date the alien obtained conditional permanent resident status, the alien and his or her spouse may file a joint petition with the USCIS to remove the conditions. Section 216(c)(1) of the Act. The petition must be accompanied by documentation that demonstrates the bona fides of the marriage. 8 C.F.R. §§ 216.4(a)(1), (5), 1216.4(a)(1), (5) (2014). If the USCIS approves the petition, the conditions on the alien's permanent resident status are removed. Section 216(c)(3)(B) of the Act; 8 C.F.R. §§ 216.4(c)(4), 1216.4(c)(4). If the USCIS denies the petition,

the alien may renew it in removal proceedings. 8 C.F.R. §§ 216.4(d)(2), 1216.4(d)(2).

Second, an alien who cannot file the joint petition can file an application to waive the joint petition requirement under section 216(c)(4) of the Act by demonstrating that (1) extreme hardship would result if the alien is removed from the United States; (2) the qualifying marriage was entered into in good faith but was terminated through no fault of the alien; or (3) the alien was subjected to abuse by either the spouse or the intended spouse. Sections 216(c)(4)(A)–(D) of the Act. *See generally Matter of Anderson*, 20 I&N Dec. 888 (BIA 1994) (discussing the various waiver options under section 216(c)(4) of the Act). There is no specified time frame for filing a waiver application. *See Matter of Stowers*, 22 I&N Dec. 605, 611 (BIA 1999); 8 C.F.R. §§ 216.5(a)(2), 1216.5(a)(2) (2014). If the USCIS approves the waiver application, it removes the conditions on the alien's permanent resident status. The regulations provide that the denial of a waiver application may be reviewed in removal proceedings. 8 C.F.R. §§ 216.5(f), 1216.5(f).

An alien whose conditional permanent resident status has been terminated is removable pursuant to section 237(a)(1)(D)(i) of the Act. Conditional permanent resident status can be terminated in three ways. First, the USCIS can affirmatively terminate such status before the 2-year conditional period has elapsed. Section 216(b)(1) of the Act. Second, conditional permanent resident status terminates automatically if the alien and his or her spouse fail to timely file the joint petition or appear for the interview. Section 216(c)(2)(A) of the Act. Third, the USCIS can terminate an alien's conditional permanent resident status if it determines that the information provided in the joint petition is not true. Section 216(c)(3)(C) of the Act.

### B. Extreme Hardship Waiver

#### 1. Unambiguous Meaning of the Statutory Text

Congress instructed that in determining extreme hardship under section 216(c)(4) of the Act, the DHS should "consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis." As with all cases involving statutory construction, we assume that "the legislative purpose is expressed by the ordinary meaning of the words" Congress chose to use. *Matter of A-A-*, 20 I&N Dec. 492, 495 (BIA 1992) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987), and *INS v. Phinpathya*, 464 U.S. 183, 189 (1984)). When the language of the controlling statute is plain, there is no issue of

interpretation because we "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). It is clear that when the words of the operative sentence in section 216(c)(4) are given their ordinary meaning, the time limitation created by Congress refers to the 2-year period for which the alien was admitted as a conditional permanent resident.

The most instructive words in the statute are the phrase "the period" and its modifying clause "was admitted for permanent residence on a conditional basis." The use of the phrase "the period" refers to a set time frame, not an open-ended status. The modifying clause, which is phrased in the past tense, indicates that the period of time will have already been established by the time the alien applies for the waiver. Congress could have simply described this period in terms of the period of conditional permanent residence or by reference to the termination of conditional permanent resident status. But it did not, instead referring to a particular fixed period of time for which the alien had already been admitted.

Significantly, Congress chose to use the phrase "was admitted" in this context. This is particularly instructive because the statutory scheme acknowledges an open-ended termination point for conditional permanent resident status. Congress clearly chose to avoid relying on a variable period of time, the termination of status, as the end point for the relevant hardship period. Instead, it directed us to consider "the period" for which the alien "was admitted."

There is only one time when an alien is "admitted" as a conditional permanent resident—when he or she is originally granted that status. Section 216(a)(1) of the Act. All conditional permanent residents are admitted for a 2-year period. *See* 8 C.F.R. § 1235.11(a)(1) (2014) (explaining that where the conditions of section 216 of the Act apply, "the alien shall be admitted conditionally for a period of 2 years"). Therefore, according to the plain language of the statute, we hold that the relevant period for determining whether extreme hardship would result from an alien's removal for purposes of establishing eligibility for a waiver under section 216(c)(4)(A) of the Act is the 2-year period for which the alien was admitted as a conditional permanent resident.

Both parties argue that the statutory language is open to interpretation by pointing out the flexibility the USCIS retains in terminating or extending conditional permanent resident status. We disagree that this fact renders the language of section 216(c)(4) ambiguous. The USCIS has the ability to alter the date on which conditional residence is ultimately terminated, either, for example, by terminating status early pursuant to section 216(b)(1) of the Act or by extending the conditional residence period while a waiver application is pending. But it cannot alter the period of time for

which an alien "was admitted" as a conditional permanent resident.  Thus, the USCIS may not retroactively alter the period of admission, saying that the alien was only admitted for an 18- or 23-month period when the status was granted.  The period of time for which an alien "was admitted" remains the same 2-year period regardless of any subsequent actions by the USCIS.  Therefore the statutory language is unambiguous, and we must apply it accordingly.  *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. at 843.

## 2.  Legislative Intent

We acknowledge that there has been confusion over the meaning of the phrase "was admitted."  In our view the only period to which this statutory language could refer is the 2-year period for which an alien is admitted in conditional permanent resident status.  However, even assuming that Congress' decision not to spell out a beginning and an end point for the hardship period renders the statutory language ambiguous, we hold that ours is the most reasonable construction of section 216(c)(4).

Our interpretation is consistent with the statute as a whole and the legislative purpose behind the statute.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484–85 (1996) (noting that although analysis of a statute begins with its text, an understanding of the statutory language does not occur in a contextual vacuum).  The statutory scheme for conditional permanent residents provides that at the end of the 2-year period, an alien may either jointly apply with his or her spouse to remove the conditions on permanent residence or apply for a waiver of the joint petition requirement.

The "no fault" waiver allows an alien spouse who is not at fault in terminating a good-faith marriage to individually remove the conditions on his or her residence.  Section 216(c)(4)(B) of the Act.  The "abuse waiver" allows an alien spouse (or intended spouse) who has been abused by a petitioner to individually remove the conditions.  Sections 216(c)(4)(C), (D) of the Act.  These waivers are clearly intended to address matters related to the marriage that generated the conditional permanent resident status.  It follows that the hardship waiver of section 216(c)(4)(A) should also relate in some way to that marriage.  Limiting the hardship period to the 2-year conditional residence period ensures that the waiver will only address hardships related to the marriage and will not become so open-ended and diffuse that it essentially creates an entirely new avenue for relief.

If we adopted the respondent's position that the hardship period ends only when the USCIS denies the waiver application, a conditional permanent resident could unilaterally extend the hardship period by

continuing to apply for waivers until extreme hardship was accumulated. An alien in this situation would be able to claim hardship that is completely unrelated to the underlying status that gave rise to the waiver.

The respondent does not claim hardship that is in any way related to her first marriage. Instead, her hardship claim is only related to the difficulty that may occur as a result of her separation from her second husband and the children born of that relationship. There is no indication that Congress intended the hardship waiver to extend to situations such as this. Although there is little legislative history for this particular provision, Congress gave some insight into its meaning when it explained an earlier version of the waiver in a report from the Committee on the Judiciary. In relevant part, the report stated:

> Of special concern to the Committee are cases which involve children. The Committee intends that a waiver be granted in cases where there is genuine humanitarian need based upon unusual hardship. For example, there may be the case of a marriage that lasts less than two years that involves a U.S. citizen parent, an alien parent, and a U.S. citizen child. In establishing the conditional residency provision, the Committee did not intend to separate parents and minor children, nor did the Committee want an alien parent's resident status to be an issue in a court decision on a custody question. . . . [T]he Committee views this provision as a safety mechanism to ensure that cases in which there is genuine humanitarian need will not be without recourse.

S. Rep. No. 99-491, at 8 (1986).

Congress was clearly contemplating situations that might arise as a result of the marriage, such as a custody dispute, and sought to alleviate hardships that could be exacerbated by the conditional nature of the alien's status. However, there is no indication that Congress intended to enact a broad waiver under this provision. To the contrary, that would be inconsistent with the entire statutory scheme, which is aimed at preventing marriage fraud. Allowing an open-ended period for an alien to claim hardship unrelated to his or her original marriage would likely foster marriage fraud, rather than discourage it.

Finally, an open-ended hardship period, even if limited to the actual date of termination as the DHS suggests, would permit the hardship period to differ from case to case and alien to alien and thus create an unequal playing field for applicants. By limiting the hardship period to the period for which an alien was admitted as a conditional permanent resident, we apply the same 2-year period to all such aliens seeking a waiver. For these reasons, even if the statutory language may be considered ambiguous, our approach results in the most reasonable interpretation of section 216(c)(4) of the Act.

### 3. Clarification of Prior Precedent

We previously considered the relevant period for determining extreme hardship in *Matter of Singh*, 24 I&N Dec. 331 (BIA 2007). The United States Court of Appeals for the Second Circuit, in whose jurisdiction the respondent's case arises, had remanded the record in *Matter of Singh* for us to address a "clear conflict" between section 216(c)(4)(A) and the applicable regulations. *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 295 (2d Cir. 2006). As the court noted, the statute provided both a start date and an end date for the hardship period, but the regulations for the hardship waiver stated that "the director shall take into account only those factors that arose subsequent to the alien's entry as a conditional permanent resident." 8 C.F.R. §§ 216.5(e)(1), 1216.5(e)(1). We found that there was no conflict because the regulations did not "contain any language that specifically contradicts the language of the statute." *Matter of Singh*, 24 I&N Dec. at 333.

The Second Circuit affirmed our decision and found that we "permissibly construed the regulation so as to harmonize it with the statute." *Singh v. Mukasey*, 536 F.3d 149, 154 (2d Cir. 2008). However, neither we nor the Second Circuit named the end point of the extreme hardship period. *Id.* at 152 (noting that we "simply adopted the end date provided in the statute," which was a more limited time frame); *Matter of Singh*, 24 I&N Dec. at 334 (rejecting the respondent's open-ended time frame because "the termination point is clearly set out" in the statute). We now clarify that the end date of the hardship period under section 216(c)(4) of the Act is the last day of the 2-year period of an alien's admission as a conditional permanent resident. Our holding finds additional support from two other circuits that have directly addressed this issue. *Hammad v. Holder*, 603 F.3d 536, 545 (9th Cir. 2010) (concluding that the alien was not eligible for a hardship waiver because the circumstances on which he based his hardship "did not exist during his two-year conditional residence status"); *Abdulahad v. Holder*, 581 F.3d 290, 296–97 (6th Cir. 2009) (holding that the Immigration Judge correctly determined that the hardship period ended on the second anniversary of the alien's lawful admission for permanent residence under section 216(c)(2)(A) of the Act).

## IV. CONCLUSION

The period for determining whether extreme hardship would result from an alien's removal for purposes of establishing eligibility for a waiver under section 216(c)(4)(A) of the Act is the 2-year period for which the alien was admitted as a conditional permanent resident. For the respondent,

that period ran from July 3, 1997, the date she was granted conditional permanent resident status, until July 3, 1999. *See generally* 8 C.F.R. § 1003.1(d)(3)(iv) (2014) (giving the Board authority to take administrative notice of commonly known facts). We therefore conclude that the Immigration Judge erred in finding that the respondent was eligible for the hardship waiver based on circumstances related to her second marriage, which occurred after the 2-year period. Accordingly, the DHS's appeal will be sustained.

The record will be remanded to the Immigration Judge to determine whether there was any qualifying hardship during the 2-year period of the respondent's conditional permanent resident status. On remand, the respondent should also be given an opportunity to apply for any other relief from removal for which she may be eligible.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.