# Matter of Blanca Eloisa PANGAN-SIS, Respondent

*Decided October 6, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien seeking to qualify for the exception to inadmissibility in section 212(a)(6)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(ii) (2012), must satisfy all three subclauses of that section, including the requirement that the alien be "a VAWA self-petitioner."

FOR RESPONDENT: Lauren D. Cusitello, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Sarah L. Martin, Associate Legal Advisor

BEFORE: Board Panel: MALPHRUS, MULLANE, and CREPPY, Board Members.

MULLANE, Board Member:

In a decision dated December 17, 2015, an Immigration Judge terminated the removal proceedings against the respondent. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent was initially charged with, and conceded, removability under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2012), as an alien who is not in possession of a valid immigrant visa or entry document. On November 5, 2014, the DHS withdrew this charge and charged the respondent with removability under section 212(a)(6)(A)(i) of the Act, for being present in the United States without being admitted or paroled. On December 17, 2015, the respondent conceded removability on the amended charge. The Immigration Judge terminated proceedings, because he concluded that the respondent qualifies for the exception to this ground of removability under section 212(a)(6)(A)(ii) of the Act.

## II.  ANALYSIS

Section 212(a)(6)(A) of the Act provides as follows:

> (i) In General
> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.
> (ii) Exception for Certain Battered Women and Children
> Clause (i) shall not apply to an alien who demonstrates that—
>  (I) the alien is a VAWA self-petitioner;
>  (II) (a)  the alien has been battered or subjected to extreme cruelty by a spouse or parent, or by a member of the spouse's or parent's family residing in the same household as the alien and the spouse or parent consented or acquiesced to such battery or cruelty, or
>    (b) the alien's child has been battered or subjected to extreme cruelty by a spouse or parent of the alien (without the active participation of the alien in the battery or cruelty) or by a member of the spouse's or parent's family residing in the same household as the alien when the spouse or parent consented to or acquiesced in such battery or cruelty and the alien did not actively participate in such battery or cruelty, and
>  (III) there was a substantial connection between the battery or cruelty described in subclause (I) or (II) and the alien's unlawful entry into the United States.

The issue presented in this case is whether an alien who seeks to qualify for the exception to inadmissibility under section 212(a)(6)(A)(ii) of the Act must satisfy all three subclauses of the exception, including the requirement that the alien be a VAWA self-petitioner.[1]  We review this question of law de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2017).

The Immigration Judge concluded that the language of section 212(a)(6)(A)(ii)(III), which references subclauses (I) and (II) in the disjunctive, indicates that Congress intended that aliens need only satisfy *either* subclauses (I) or (III), *or* subclauses (II) and (III).  He concluded that even though the respondent is not a VAWA self-petitioner and thus cannot satisfy subclause (I), she was "fleeing from an extended period of domestic

---

[1]  "VAWA" is the short title for the Violence Against Women Act of 1994, which was enacted as Title IV of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 1902.  To qualify as a "VAWA self-petitioner," an alien is generally required to show that his or her abuser is a spouse or parent who is either a United States citizen or a lawful permanent resident.  *See* section 101(a)(51) of the Act, 8 U.S.C. § 1101(a)(51) (2012) (also including certain applicants under the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2160, 2193; the Cuban Refugee Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161; and the Haitian Refugee Immigration Fairness Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681-538).

violence" in Guatemala at the hands of her Guatemalan citizen spouse, satisfying subclauses (II) and (III), and entitling her to the exception to the ground of removability.

The DHS argues that the respondent must satisfy all three subclauses of section 212(a)(6)(A)(ii) of the Act and that because the respondent is not a VAWA self-petitioner as required under subclause (I), she does not qualify for this exception. The respondent agrees with the Immigration Judge's interpretation of the statute. She contends that the statute is ambiguous, given the lack of a conjunction after subclause (I) and the disjunctive in subclause III. The respondent argues that because subclause (III) requires a "substantial connection" between the battery or cruelty described in subclause (I) *or* (II), an alien need only satisfy either (I) or (II), but not both.

A. Statutory Language

In interpreting section 212(a)(6)(A)(ii) of the Act, we look first to the plain meaning of its statutory language and give effect to that meaning when possible. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997); *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir. 2004). Moreover, in "ascertaining the plain meaning of the statute, [we] must look to the particular statutory language at issue," its context, and "the language and design of the statute as a whole." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)); *see also Robinson*, 519 U.S. at 341; *Matter of Richmond*, 26 I&N Dec. 779, 783 (BIA 2016).

As a general matter, the placement of the word "and" at the end of the second to last subclause in a statute indicates that all subclauses of the statute must be satisfied. *See generally* 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21:14 (7th ed.), Westlaw (database updated Nov. 2016) ("Where two or more requirements are provided in a section and it is the legislative intent that all the requirements be fulfilled in order to comply with the statute, the conjunctive 'and' should be used."). Thus, the most natural reading of section 212(a)(6)(A)(ii) is that the respondent must satisfy subclauses (I), (II), and (III) of that section, but subclause (III) may be satisfied two different ways. However, since the language in subclause (III) refers to "subclauses (I) or (II)" in the disjunctive, we agree with the respondent that the language of section 212(a)(6)(A)(ii) of the Act is ambiguous.

B.  Legislative History

"Where the statutory language is unclear, we consider legislative history to help discern congressional intent."  *Matter of L-A-C-*, 26 I&N Dec. 516, 518 (BIA 2015).  The statutory language at issue in this case was added by section 301(c)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-578.  The legislative history of the IIRIRA does not contain any explicit consideration of the statutory language in question and thus is of limited assistance in interpreting Congress' intent.  However, a review of the legislative history of the VAWA and the reasons for its enactment are instructive in discerning congressional intent for this provision.  *See United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme.").

Under the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163, aliens who married United States citizens or lawful permanent residents were granted immediate lawful permanent resident status.  Concerns about marriage fraud under such a framework prompted Congress to pass the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, which created a 2-year conditional period before lawful permanent resident status could be granted to the alien spouse.  *See* section 216 of the Act, 8 U.S.C. § 1186a (2012); *see also Matter of Munroe*, 26 I&N Dec. 428, 430 (BIA 2014).  However, because the United States citizen or lawful permanent resident spouse's consent and cooperation were required to file a joint petition to remove the conditional status, these amendments resulted in giving the United States citizen or lawful permanent resident spouse considerable leverage over their foreign national spouse.  In turn, this created a situation in which abused alien spouses were reluctant to leave their United States citizen or lawful permanent resident abuser for fear of losing their potential to adjust their status.  William A. Kandel, Cong. Research Serv., R42477, *Immigration Provisions of the Violence Against Women Act (VAWA)* 21–22 (2012).

Congress sought to remedy this situation by creating the battered spouse waiver, which was included in the Immigration Act of 1990, Pub. L. No. 101-649, § 701(a)(4), 104 Stat. 4978, 5085, and which is codified in section 216(c)(4)(C) of the Act.  This provision waives the requirement to submit a petition and appear for an interview to remove conditional resident status for aliens who entered their marriage in good faith, but who (or whose child) was battered or suffered extreme cruelty by the United States citizen or lawful permanent resident spouse (or parent).  According to the House Judiciary Committee Report related to this provision, its purpose "is to

ensure that when the U.S. citizen or permanent resident spouse or parent engages in battering or cruelty against a spouse or child, neither the spouse nor child should be entrapped in the abusive relationship by the threat of losing their legal resident status." H.R. Rep. No. 101-723(I), at 78 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6758.

To further expand protection for battered alien spouses of United States citizens and lawful permanent residents, Congress passed the VAWA in 1994, which included provisions allowing an alien who is battered or subject to extreme cruelty at the hands of a United States citizen or lawful permanent resident spouse to adjust his or her status through the self-petitioning process. The House Judiciary Committee Report accompanying the legislation explained its purpose as follows:

> Domestic battery problems can become terribly exacerbated in marriages where one spouse is not a citizen, and the non-citizens [sic] legal status depends on his or her marriage to the abuser. Current law fosters domestic violence in such situations by placing full and complete control of the alien spouse's ability to gain permanent legal status in the hands of the citizen or lawful permanent resident spouse. . . .
>     . . . .
>     . . . The purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse.

H.R. Rep. No. 103-395, at 26, 37 (1993), 1993 WL 484760; *see also* 140 Cong. Rec. H10,693, H10,693 (daily ed. Oct. 4, 1994) (statement of Rep. Schumer), 1994 WL 545675, at *H10,693-01 (stating that the VAWA "permits immigrant spouses of United States citizens to escape from their abusive spouses without risking deportation").

This legislative history makes clear that in enacting these laws, Congress intended to protect vulnerable aliens from domestic abuse at the hands of a United States citizen or lawful permanent resident spouse. The Violence Against Women Act of 2000 ("VAWA 2000"), Division B of Pub. L. No. 106-386, 114 Stat. 1491, which reauthorized the 1994 VAWA and contained the Battered Immigrant Women Protection Act of 2000, *id.* § 1501, 114 Stat. at 1518, reflects Congress' continued focus on the status of the abuser as a United States citizen or lawful permanent resident. The House Conference Report also states that the VAWA 2000 is "designed to improve on efforts made in VAWA 1994 to prevent immigration law from being used by an abusive citizen or lawful permanent resident spouse as a tool to prevent an abused immigrant spouse from reporting abuse or leaving the abusive relationship." H.R. Rep. No. 106-939, at 111 (2000) (Conf. Rep.) (Joint Explanatory Statement), 2000 WL 1479163, at *111; *see also Matter of A-M-*, 25 I&N Dec. 66, 74–75 (BIA 2009).

### C. Scope of Section 212(a)(6)(A)(ii) of the Act

Given Congress' consistent focus on preventing United States citizens and lawful permanent residents from using their status to abuse and control their alien spouses and children, the most reasonable interpretation of the exception in section 212(a)(6)(A)(ii) of the Act is that an alien must satisfy subclauses (I), (II), *and* (III) of that provision. The disjunctive language in subclauses (II) and (III) does not contravene this interpretation. Consistent with the overall legislative purpose of the VAWA, subclause (II) reflects a desire by Congress to expand the protection for abused aliens to cover abuse committed not only by United States citizen and lawful permanent resident spouses and parents but also by members of the household where the abuser is acting at the direction of the United States citizen and lawful permanent resident. Subclause (III) also expands eligibility for the exception by only requiring that abuse suffered either under subclause (I) (in connection with an alien's VAWA self-petitioner status) or under subclause (II) be substantially connected to the unlawful entry. The practical effect of this interpretation is that a spouse of a United States citizen or lawful permanent resident who suffers abuse is covered. However, coverage is not extended to aliens who are married to non-United States citizens and non-lawful permanent residents, because such persons lack "immigration leverage" over their spouses.

The respondent's contention that interpreting section 212(a)(6)(A)(ii) this way effectively renders subclause (II) superfluous is not persuasive. While subclauses (I) and (II) overlap, there are important differences between the subclauses that cannot be overlooked. For example, subclause (II) covers abuse that the alien may suffer after attaining VAWA self-petitioner status. As discussed above, it also covers abuse committed by members of a spouse's or parent's household. Consistent with the legislative history of the VAWA, that provision still requires that such abuse be connected to a United States citizen or lawful permanent resident spouse or parent who is directing the abuse. Although subclauses (I) and (II) may overlap in certain circumstances, this overlap reflects Congress' intent to ensure that there would not be a gap in coverage for aliens who are abused by, or with the consent of, United States citizen or lawful permanent resident spouses or parents.

The Immigration Judge's interpretation, on the other hand, would vastly expand the reach of this provision. Allowing an alien to qualify for the exception in section 212(a)(6)(A)(ii) of the Act by satisfying only subclauses (II) and (III) would effectively remove the connection to a United States

citizen or lawful permanent resident abuser.[2]  It would thus apply to any domestic abuse situation in the world.  The respondent's case illustrates this expansive interpretation because she alleges that she was abused by her Guatemalan spouse, who is not a United States citizen or lawful permanent resident.  Congress was concerned with "placing full and complete control of the alien spouse's ability to gain permanent legal status in the hands of the citizen or lawful permanent resident spouse," not with creating an exception to a ground of inadmissibility for domestic abuse of an alien that takes place outside the United States.  H.R. Rep. No. 103-395, at 26.  It is unlikely that Congress intended to create such a sweepingly broad exception to this very common ground of inadmissibility.

Furthermore, interpreting the exception to only require satisfaction of subclauses (II) and (III) would leave this respondent in an unusual situation, because she would not be removable for entering the United States without inspection, yet she would have no legal status in the United States.  Congress could not have intended such a result.  Examining the VAWA framework as a whole, it is clear that Congress intended to remove obstacles for a vulnerable subset of abused aliens seeking to adjust their status through the VAWA.  Thus, we agree with the DHS that it is more reasonable to conclude that Congress enacted the exception to prevent the ground of inadmissibility from being used to disqualify a VAWA self-petitioner from adjusting her status.  *See* section 245(a) of the Act, 8 U.S.C. § 1255(a) (2012).

Accordingly, all three subclauses, including subclause (I) requiring VAWA self-petitioner status, must be satisfied to qualify for the exception under section 212(a)(6)(A)(ii) of the Act.[3]

---

[2]   Although the VAWA self-petitioning provisions can apply to abuse committed abroad, a connection to a United States citizen or lawful permanent resident abuser is still required. *See* sections 204(a)(1)(A)(v), (B)(iv) of the Act, 8 U.S.C. §§ 1154(a)(1)(A)(v), (B)(iv) (2012).

[3]   Our interpretation of the section 212(a)(6)(A)(ii) exception does not leave aliens such as the respondent without a possible remedy under the immigration laws.  Aliens who suffer battery or extreme cruelty from a non-lawful permanent resident or non-United States citizen spouse, who are not VAWA self-petitioners may apply for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted and opened for signature Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). *See Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014).  Moreover, they would not be prohibited from contesting the ground or grounds of removability.

## III.  CONCLUSION

Considering the language of the statute, the legislative history and overall purpose of the VAWA, and the policy considerations raised by the DHS, we hold that an alien who seeks to qualify for the exception to inadmissibility under section 212(a)(6)(A)(ii) of the Act must satisfy all three subclauses of that section, including the requirement that the alien be a VAWA self-petitioner.  Because the respondent is not a VAWA self-petitioner, she has not established her eligibility for the exception to inadmissibility. Therefore, the Immigration Judge improperly terminated proceedings. Accordingly, the DHS's appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to give the respondent an opportunity to pursue any form of relief for which she may be eligible.

**ORDER:**  The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.