# Matter of L-L-P-, Respondent

*Decided February 24, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An applicant for special rule cancellation of removal under section 240A(b)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(2) (2018), based on spousal abuse must demonstrate both that the abuser was his or her lawful spouse and possessed either United States citizenship or lawful permanent resident status at the time of the abuse.

FOR RESPONDENT: Laura L. Lichter, Esquire, Denver, Colorado

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kalin Ivany, Assistant Chief Counsel

BEFORE: Board Panel: GREER and GOODWIN, Appellate Immigration Judges; PEPPER, Temporary Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

In a decision dated September 17, 2019, an Immigration Judge denied the respondent's application for special rule cancellation of removal under section 240A(b)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(2) (2018), a form of relief reserved for certain victims of domestic violence in accordance with the provisions of the Violence of Against Women Act, enacted as Title IV of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 1902 ("VAWA"). The respondent has appealed from this decision. During the pendency of his appeal, he filed a motion to remand so that he may apply for cancellation of removal for certain nonpermanent residents pursuant to section 240A(b)(1) of the Act, based on intervening case law. The Department of Homeland Security ("DHS") opposes the respondent's appeal and motion. The appeal will be dismissed, the motion will be granted, and the record will be remanded.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without being admitted or paroled. The following facts are undisputed. In 2001, an Immigration Judge denied his application for cancellation of

removal under section 240A(b)(1) of the Act because he had not demonstrated the requisite hardship to a qualifying relative and granted his request for voluntary departure. The respondent departed from the United States but then reentered this country without admission or parole.

In 2006, the respondent was again placed in removal proceedings through the service of a notice to appear that failed to specify the time and date of his removal hearing. Based on his common law marriage, which lasted from 1995 to 2011, he filed an application for adjustment of status as a battered spouse self-petitioner. In 2012, the United States Citizenship and Immigration Service denied his Petition for Amerasian, Widow(er), or Special Immigrant (Form I-360) because he had not established that his former spouse possessed lawful immigration status in the United States during their marriage.

Before the Immigration Judge, the respondent sought special rule cancellation of removal under section 240A(b)(2) of the Act. The Immigration Judge denied this application because the respondent had not met his burden of proof to show that, during his marriage, his former spouse held the necessary status either as a United States citizen or lawful permanent resident when she abused him. Sections 240A(b)(2)(A)(i)(I), (II) of the Act.

## II. ANALYSIS

### A. Special Rule Cancellation of Removal

Section 240A(b)(2)(A) of the Act provides, in relevant part, that

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien demonstrates that—
> (i)(I) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen (or is the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent); [or]
> (II) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a lawful permanent resident (or is the parent of a child of an alien who is or was a lawful permanent resident and the child has been battered or subjected to extreme cruelty by such permanent resident parent) . . . .

These provisions plainly state that an abusive spouse must be either a United States citizen or a lawful permanent resident at some point in time. This case presents a matter of first impression, namely, whether an applicant for special rule cancellation of removal must demonstrate that his or her spouse possessed United States citizenship or lawful permanent resident status at the time that the applicant was abused by and married to this spouse.

242

This is a legal question, which we review de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2020).

## 1.  Statutory Construction

We begin by considering whether sections 240A(b)(2)(A)(i)(I) and (II) clearly and unambiguously specify the point in time at which the abusive spouse must possess either United States citizenship or lawful permanent resident status. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019) ("[W]e begin 'where all such inquiries begin:  with the language of the statute itself.'" (citation omitted)); *see also Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) (stating that a court should "interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment").  "To determine whether Congress has directly spoken on [an] issue, we use 'traditional tools of statutory construction.'" *Banuelos v. Barr*, 953 F.3d 1176, 1180 (10th Cir. 2020) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.* ("*Chevron*"), 467 U.S. 837, 843 n.9 (1984)).  Where the language of the statute is clear and unambiguous, our inquiry ends, because we "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

Sections 240A(b)(2)(A)(i)(I) and (II) of the Act require an alien to have been "battered or subjected to extreme cruelty by a spouse . . . who is or was" either a United States citizen or lawful permanent resident.  We perceive, from the plain language of the statute, more than one possible time frame for the spouse to hold United States citizen or lawful permanent resident status. The word "is" in these provisions could be interpreted to mean that the spouse held United States citizenship or permanent resident status at the time of the marriage and abuse, or, as the respondent argues, at the time the application for cancellation of removal was filed.  As the statute is susceptible to more than one interpretation, we conclude that sections 240A(b)(2)(A)(i)(I) and (II) are ambiguous.  We must therefore determine which interpretation reasonably reflects Congress' intentions for these provisions. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (stating that "ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion"); *Martinez-Perez v. Barr*, 947 F.3d 1273, 1280 (10th Cir. 2020) (same).

## 2.  Overall Statutory Context

"The broader context . . . of the statute provides considerable assistance" in construing an ambiguous term or phrase. *Robinson v. Shell Oil Co.*, 519

U.S. 337, 345 (1997).  An analysis of the overall statutory context may not resolve an ambiguity, but it will assist in determining which meaning applies when considering the statute's purpose.  *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94–95 (1993); *see also Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1374 (10th Cir. 2009) ("[W]e must ask whether the word *is* used ambiguously within the actual . . . context in which it appears.  After all, when interpreting a . . . statute, we derive meaning not just from abstract words in isolation, but from their context . . . as a whole.").

Here, the parentheticals in sections 240A(b)(2)(A)(i)(I) and (II) provide context in determining the overall meaning of those provisions.  For instance, the parenthetical at section 240A(b)(2)(A)(i)(I) provides that an applicant may be "( . . . the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent)."[1]  We find it significant that the phrase "*has been battered or subjected* to extreme cruelty by such citizen parent" in this parenthetical is in the present perfect tense.  Section 240A(b)(2)(A)(i)(I) of the Act (emphasis added).  Congress uses this tense to "denot[e] an act that has been completed." *Barrett v. United States*, 423 U.S. 212, 216 (1976); *see also Carr v. United States*, 560 U.S. 438, 448 (2010) (looking to "Congress' choice of verb tense to ascertain a statute's temporal reach").  The parenthetical specifies that this past harm must have been committed "by [a] citizen parent."  Thus, the ordinary meaning of this parenthetical is that the child must have been abused by a parent who was a citizen at the time the abuse took place.  *See Bostock*, 140 S. Ct. at 1738.

Notably, removing the final phrase "by such citizen parent" from this parenthetical would not change our understanding of the statute *except* with regard to the abuser's status at the time the abuse occurred.  In this way, Congress used the phrase "by such citizen parent" to explicitly tie the abusive parent's citizenship status to the past abuse, indicating that the abusive parent must have possessed United States citizenship status at the time the abuse took place.  Based on our examination of sections 240A(b)(2)(A)(i)(I) and (II) as a whole, including their parentheticals, we conclude that the abusive spouse (or parent) must be a United States citizen or lawful permanent resident at the time of the abuse.  Moreover, because the spousal portion of these provisions requires the abuser to be a "*spouse*," this abuse must have occurred during the course of the marriage.  Section 240A(b)(2)(A)(i)(I) of the Act (emphasis added); *see also* section 240A(b)(2)(A)(i)(II) of the Act.

---

[1]  The parenthetical is identical in both sections, except as to the status of the parent as either a United States citizen or lawful permanent resident.  We examine only the first parenthetical, but our reasoning applies to both sections.

With the context of the statute as a whole in mind, we interpret the term "is" in sections 240A(b)(2)(A)(i)(I) and (II) as requiring that the abusive spouse (or parent) be a United States citizen or lawful permanent resident at the time the battery or extreme cruelty occurred.  We interpret the expanded phrase, "is or was" in the statute to mean that the spouse (or parent) may later lose his or her citizenship or lawful permanent resident status.  Yet the applicant does not lose the opportunity to apply for special rule cancellation of removal so long as that spouse (or parent) was a citizen or permanent resident at the time the abuse occurred, and, in the spousal context, the applicant was married to the abuser during this abuse.  To sum up our interpretation of the statute in the marriage context, the spouse must be a spouse during the abuse—that is, the abuse occurs during the marriage—and that, at the time of the abuse, the spouse is either a United States citizen or lawful permanent resident.  We next consider whether our interpretation is reasonable given Congress' intent in designing the VAWA.

### 3.  Legislative Intent

Because the plain language of the statute is ambiguous, we may consider whether the relevant legislative history of the VAWA provisions in the Act confirms our interpretation of sections 240A(b)(2)(A)(i)(I) and (II).  *See Matter of L-A-C-*, 26 I&N Dec. 516, 518 (BIA 2015); *see also United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) ("If the statute's plain language is ambiguous as to [c]ongressional intent, 'we look to the legislative history and the underlying public policy of the statute.'" (citation omitted)).  Although legislative statements have less force than the plain language of the statute, such statements are helpful to corroborate and underscore a reasonable interpretation of the statute.  *See generally, e.g.*, *Weinberger v. Rossi*, 456 U.S. 25, 32 (1982).  A review of the relevant legislative history confirms that our interpretation of these provisions is consistent with the underlying purpose of the VAWA.

In *Matter of Pangan-Sis*, 27 I&N Dec. 130, 133–34 (BIA 2017), we discussed the legislative history of the VAWA in the context of an exception to inadmissibility under section 212(a)(6)(A) of the Act, 8 U.S.C. § 1182(a)(6)(A) (2012), for certain battered women and children.[2]  We observed that Congress intended to reduce marriage fraud by requiring a conditional permanent resident to file a joint petition with his or her United States citizen or permanent resident spouse to remove the conditions on residence.  However, this requirement "created a situation in which abused alien spouses were reluctant to leave their United States citizen or lawful

---

[2]   We recognize that *Pagnan-Sis* discussed a separate provision of the Act.  We rely upon this case solely for its discussion of legislative intent with regards to the VAWA.

permanent resident abusers for fear of losing their potential to adjust their status." *Id.* at 133.  We discussed how the House Judiciary Committee Report accompanying the VAWA recognized that

> [d]omestic battery problems can become terribly exacerbated in marriages where one spouse is not a citizen, and the non-citizen[']s legal status depends on his or her marriage to the abuser.  Current law fosters domestic violence in such situations by placing full and complete control of the alien's spouse's ability to gain permanent legal status in the hands of the citizen or lawful permanent resident spouse.

*Id.* at 134 (quoting H.R. Rep. No. 103-395, at 26, 37 (1993), 1993 WL 484760).

This concern of Congress—that an alien spouse would be subject to a United States citizen or lawful permanent resident spouse's control over his or her immigration status—motivated the VAWA legislation to ensure that aliens do not remain in abusive relationships because of immigration consequences.  *See* H.R. Rep. No. 106-939, at 111 (2000) (Conf. Rep.) (Joint Explanatory Statement), 2000 WL 1479163, at *111 (stating that the VAWA was "designed . . . to prevent immigration law from being used by an abusive citizen or lawful permanent resident spouse as a tool to prevent an abused immigrant spouse from reporting abuse or leaving the abusive relationship"); *see also* 140 Cong. Rec. H10,693, H10,693 (daily ed. Oct. 4, 1994) (statement of Rep. Schumer), 1994 WL 545675, at *H10,693-01 (stating that the VAWA "permits immigrant spouses of United States citizens to escape from their abusive spouses without risking deportation").

This Board and the circuit courts have recognized that Congress intended the VAWA to prevent abusive citizens and residents from using immigration benefits as a means to control their alien spouses.  *See, e.g.*, *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 983 (10th Cir. 2005) (recognizing that Congress enacted the VAWA to protect victims of abuse); *see also Da Silva v. Att'y Gen. U.S.*, 948 F.3d 629, 636 (3d Cir. 2020) ("VAWA cancellation of removal is 'intended to ameliorate the impact of harsh provisions of immigration law on abused women.'" (citation omitted)); *Toro v. Sec'y, U.S. Dep't Homeland of Sec.*, 707 F.3d 1224, 1230 (11th Cir. 2013) (stating that the purpose of the VAWA's self-petitioning provisions "is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse" (quoting H.R. Rep. No. 103-395, at 37)); *Matter of Pangan-Sis*, 27 I&N Dec. at 134 (quoting same); *Matter of M-L-M-A-*, 26 I&N Dec. 360, 364 (BIA 2014) ("[A] purpose of VAWA relief is to empower aliens to leave abusive relationships."); *Matter of A-M-*, 25 I&N Dec. 66, 77 (BIA 2009) (stating that "the underlying purpose of the battered spouse provisions of the Act . . . is to enable aliens to leave their abusive citizen or lawful permanent resident spouses who may use the threat

of deportation or sponsorship for an immigration benefit to maintain control over them").

Although the VAWA has been amended several times to include a self-petitioning visa provision, special rule cancellation of removal for battered aliens, and an exception to inadmissibility, we recognize that, in enacting all these benefits, one of Congress' goals was to free abused spouses, who are married to United States citizens or lawful permanent residents, from the fear that remaining in an abusive marriage is the only way to obtain lawful immigration status. This goal clearly contemplates that the abusive United States citizen or lawful permanent resident spouse is actually able to use that status to benefit—or punish—his or her alien spouse. We made this particularly clear in *Matter of Pangan-Sis*, 27 I&N Dec. at 135, where we stated that the VAWA exception to inadmissibility in that case covers "a spouse of a United States citizen or lawful permanent resident who suffers abuse . . . . However, coverage is not extended to aliens who are married to non-United States citizens and non-lawful permanent residents, because such persons lack 'immigration leverage' over their spouses."

In light of this discussion from *Pangan-Sis*, we conclude that our interpretation of sections 240A(b)(2)(A)(i)(I) and (II) is reasonable and consistent with congressional intent. Where the abuser is the spouse of an applicant seeking special rule cancellation of removal based on spousal abuse, the applicant must demonstrate that the abuser held both legal status as the applicant's legally recognized spouse *and* United States citizenship or lawful permanent resident status at the time of the abuse.

We have recognized that special rule cancellation of removal is a continuing application since an applicant continues to accrue physical presence and good moral character until the final administrative order is entered. *See Matter of M-L-M-A-*, 26 I&N Dec. at 363. However, the continuing nature of this form of relief does not relieve an applicant of the burden to demonstrate that, at the time of abuse occurring during the marriage, the abuser was his or her lawful spouse and either a United States citizen or lawful permanent resident. Our decision in *M-L-M-A-* supports this conclusion. There, we granted special rule cancellation of removal to an applicant who had divorced her abuser, after the abuse had taken place. Since her abuser was her lawful spouse and either a citizen or permanent resident *at the time of the abuse*, her divorce was irrelevant to her statutory eligibility for this form of relief.

Our interpretation of sections 240A(b)(2)(A)(i)(I) and (II) gives full effect to the language enacted by Congress and is consistent with congressional intent. We therefore hold that an applicant for special rule cancellation of removal under section 240A(b)(2) based on spousal abuse must demonstrate both that the abuser was his or her lawful spouse and

possessed either United States citizenship or lawful permanent resident status at the time of the abuse, even if the abuser's spousal status, citizenship, or lawful permanent resident status was later terminated or revoked, or the abuser can no longer use an immigration benefit to control the applicant.

### 4. Application to the Respondent's Case

The respondent has not demonstrated that his former spouse was a United States citizen or lawful permanent resident at the time they were married and when she abused him. The parties agreed below, and do not otherwise dispute on appeal, that the respondent's former spouse was not a United States citizen or permanent resident during the marriage and abuse. The parties further agreed below, and do not dispute on appeal, that she had likely obtained permanent residence some years after the marriage and abuse ended. Because the respondent has not shown that his former spouse was a citizen or permanent resident during the marriage and abuse, he is ineligible for special rule cancellation of removal pursuant to section 240A(b)(2) of the Act.[3]

We are not persuaded by the respondent's argument that his former wife used the fact that she had applied for, but had not yet obtained, immigration status during their marriage as "leverage" to keep him in the abusive marriage. An abusive spouse must have the *actual* ability to affect an alien's immigration status in order to threaten the alien in the manner contemplated by the VAWA. Thus, the Immigration Judge correctly denied the respondent's application for special rule cancellation of removal.

### B. Motion to Remand

The respondent argues that remand is warranted so that he can apply for cancellation of removal under section 240A(b)(1) of the Act because he may be able to establish the requisite 10 years of continuous physical presence for this form of relief under intervening case law from the United States Court of Appeals for the Tenth Circuit, in whose jurisdiction this case arises. *See*

---

[3] On appeal, the respondent renews his argument that the DHS has access to the respondent's former spouse's immigration records, and it refuses to share them, despite formal requests that it do so. The Immigration Judge properly determined that the respondent was responsible for demonstrating eligibility for relief. 8 C.F.R. § 1240.8(d) (2020). The DHS is not required to provide documentation of immigration status for persons not a party to these matters. Moreover, the refusal to share information about the ex-wife's current lawful immigration status is not a due process violation, as it would not affect the outcome in the respondent's case. *See Matumona v. Barr*, 945 F.3d 1294, 1308 (10th Cir. 2019) ("To prevail on a due-process challenge, the petitioner must show prejudicial error.").

*Banuelos*, 953 F.3d at 1184 (holding that the "stop-time" rule ending the period of continuous physical presence for cancellation of removal is not triggered by the combination of two documents containing the date and time of the removal hearing).  Because the relevant notice to appear failed to specify the time and date of the respondent's hearing, it was incomplete, and we agree with the respondent that he may now be able to establish the requisite period of physical presence under section 240A(b)(1)(A). Accordingly, the respondent's appeal is dismissed and his motion to remand is granted so that he may pursue cancellation of removal under section 240A(b)(1) of the Act.

**ORDER:**  The respondent's appeal is dismissed.

**FURTHER ORDER:**  The respondent's motion to remand is granted, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.